MEARES AND MANNING, RECEIVERS OF CAROLINA IN-
TERSTATE B. & L. ASSN., v. FINLAYSON.

1. CONTRACT—N. C. CONTRACT—B. & L. ASSN.—Is this contract made with a North Carolina building and loan association a North Carolina contract?

2. B. & L. ASSN.—CORPORATIONS—STOCKHOLDER—CORPORATOR.—The question whether a non-resident borrower of a building and loan association who has assigned his stock to the association to secure his loan, is liable for his prorata share on his stock to pay losses of the association, does not arise in this case, but only that of lender and borrower. *Justice Pope dissents.*

3. IBID.—IBID.—IBID.—FOREIGN COURTS—COMITY OF COURTS.—A borrower of a foreign building and loan association is not bound by the proceedings in North Carolina Courts to wind up the affairs of the insolvent association, because: (1) he was not a party; (2) of exemption in order; (3) he had assigned his stock to association before insolvency, and is not now a stockholder. *Justice Pope dissents.*

4. USURY—B. & L. ASSN.—A contract of a building and loan associa-
tion charging six per cent. interest on a loan and six per cent. pre-
mium is usurious.

5. IBID.—IBID.—A TRANSFEREE of a building and loan contract may
plead usury as to payments made by him on such contract.

6. REMEDIES—USURY—STATUTORY PENALTY—FOREIGN CONTRACTS—
CONTRACTS.—When a North Carolina contract is held by the Courts
of that State to be usurious, and such contract is sought to be
enforced against a resident, and he pleads usury, the penalty for
charging usury prescribed by our statute will be enforced against
the foreign contract. *Justice Pope dissents.*

7. USURY—REFERENCE.—Order remanding case to master to compute
amount due after sustaining plea of usury, proper.

8. B. & L. ASSN.—ATTORNEY'S FEES—MORTGAGES.—Where a borrower
of a building and loan association agrees to pay ten per cent. attor-
ney's fees in case of foreclosure of his mortgage, but on account of
insolvency of association he cannot complete his contract, and fore-
closure becomes necessary in order to ascertain his liability in wind-
ing up affairs of the association, such claim becomes nugatory.

Before GARY, J., Chesterfield, July, 1898.    Affirmed.

Action by Iredell Meares and P. B. Manning, receivers of
the Carolina and Interstate Building and Loan Association,
against Henry W. Finlayson.   The contract under which
defendant borrowed from plaintiff corporation provided for
payment of six per cent. interest and six per cent. premium.
From Circuit decree plaintiffs appeal.

*Mr. R. T. Caston,* for appellant, cites: *Contracts of de-
fendant are North Carolina contracts, and are to be per-
formed and construed under laws of that State:* 49 S. C.,
402; 50 S. C., 303; 51 S. C., 427; 53 S. C., 73.   *Defendant
is bound by decisions of North Carolina Courts as a stock-
holder in suit in which his insolvent corporation was defend-
ant:* 11 S. E. R., 610; 85 Va., 9; 6 S. E. R., 866; 9 S. E. R.,
129; 10 S. E. R., 277, 679; 29 L. R. A., 184; 10 Rich. Eq.,
482; 3 Strob. Eq., 300.   *Is this borrowing stockholder
liable to contribute his pro rata share to pay losses?* 115 N.
C., 825; 116 N. C., 825; 28 S. E. R., 188; 117 N. C., 318;

120 N. C., 420; 34 L. R. A., 201; 29 L. R. A., 184; 61 Fed., 446; 35 L. R. A., 244; 115 Penn., 274; 177 Penn., 233. *Plaintiffs are officers of Court appointed in behalf of all:* 89 N. Y., 103; 111 Mass., 510; 26 Wall, 228; 9 S. C., 323; 30 S. C., 206. *Usury can only be pleaded by defendant as against his own contract:* 47 S. C., 397; 29 S. C., 501; 53 S. C., 115. *Original contracts of defendants were not usurious under laws of either State:* 51 S. C., 420, 550; 115 N. C., 825; 116 N. C., 877.

*Messrs. Stevenson & Matheson,* contra, cite: *Respondent is not bound by any adjudication in North Carolina:* 95 U. S., 714; 35 S. C., 95; 44 S. C., 195; 39 S. C., 484; 40 S. C., 520. *There can be no reduction of amount paid in by respondent; all paid in must be credited on debt:* 23 S. E. R., 452; 52 S. C., 421. *The stock can only be assessed against holder, and respondent holds no stock:* 96 U. S., 328; 99 U. S., 628; 6 Hill, 624; 11 N. Y., 148; 18 N. Y., 199; 11 Cush., 183; 44 Md., 349; 10 Md., 525; 77 Ill., 296. *If contract is usurious must settlement be made under laws of this State or North Carolina?* 49 S. C., 452; 44 S. C., 121; 9 L. R. A., 603. *Respondent may plead usury as to Fesperman debt:* 47 S. C., 405; 53 S. C., 115. *Charging usury is sufficient to bring down the penalty:* 51 S. C., 583.

*Mr. Edward McIver,* also contra, cites: *These contracts are usurious whether construed under North or South Carolina laws:* 21 S. E. R., 924; 18 S. E. R., 965; 23 S. E. R., 450; 12 Rich. Eq., 124; 15 S. C., 462; 44 S. C., 120; 27 S. C., 110; 45 S. C., 381; 51 S. C., 583. *Under the laws of what State should this contract be construed?* 18 S. E. R., 967; 21 S. E. R., 926; 19 S. C., 583; 49 S. C., 402; 50 S. C., 303. *Act of 1898, p. 747, as to construction of contracts, is not unconstitutional as to existing contracts, but merely remedial:* 4 Wheat, 122; 9 S. C., 20; 31 S. C., 1; 16 S. C., 15. *In this State, such contracts are regarded merely as loans:* 12 Rich. Eq., 124; 15 S. C., 462; 44 S. C., 120; 45 S. C.,

391; 51 S. C., 420; 50 S. C., 303. *Assessment must be made against party holding stock:* 9 Otto, 628; 6 Otto, 328. *Assessment if properly made can be no part of mortgage debt:* 36 S. C., 331; 52 S. C., 421. *Respondent can plead usury to the Fesperman debt:* 47 S. C., 397; 53 S. C., 115.

May 8, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. In July, 1895, at the suit of William H. Strauss, the Carolina Building and Loan Association, located at Wilmington, in the State of North Carolina, and doing business in that State, and in the States of South Carolina and Georgia, in the Superior Court of New Hanover County, was declared insolvent, and its affairs ordered to be wound up. For this purpose the present plaintiffs were duly appointed, by said Court, as the receivers of said building and loan association, and they have accepted, qualified, and entered upon the discharge of the duties of such office of receivers. The defendant, Henry W. Finlayson, in the year 1891 became a stockholder by having issued to him thirty shares of loan stock, and upon these shares as a basis; he borrowed $3,000 of such building and loan association, and to secure such loan he assigned his thirty shares of the said stock to said building and loan association, and also executed a mortgage on real property located in Cheraw, in the State of South Carolina, to said building and loan association, as an additional security for said loan. One Lawrence H. Fesperman also became the holder of seven shares in said building and loan association, in the year 1891, and in the year 1892, he borrowed $700, executing an assignment of his stock and a mortgage of a house and lot in Cheraw, S. C., to the building and loan association, but on the 4th February, 1893, the aforesaid Finlayson purchased from the said Fesperman the land so mortgaged, and his seven shares of said stock, together with all his rights and interests therein and thereto, and assumed the obligations of the said Fesperman, as set out in the act incorporating the building and loan association, and in its by-laws. Finlayson con-

tinued the payments on his own thirty shares of stock and the seven shares purchased from Fesperman, until the 5th day of March, 1895; but nothing was done between 5th March, 1895, and July, 1895, touching Finlayson's failure to pay, although the three months were out on 5th June, 1895. The plaintiffs, as receivers, were directed by the Superior Court of New Hanover, in North Carolina, to settle with the borrowers of the bankrupt building and loan association and according to the complaint herein: "The Court in said cause further ordered and decreed that the receivers, these plaintiffs, in ascertaining the value or amount of stock of the respective stockholders, should credit each stockholder with all that he had paid on his stock, whether held as borrowing or non-borrowing shares, including all payments of dues, fines, and all amounts under whatever name paid; and that in addition thereto, he should be credited with an average interest of six per cent. thereon, and that the aggregate so ascertained should constitute the value of his stock or claim against the association as of the date of July 24th, 1895; and that upon this aggregate so ascertained, he should be permitted to participate *pro rata* in the dividends declared from time to time. That the Court in said cause further directed these receivers, in settling with the members of the association, who have borrowed upon their stock, and either given their bond and mortgage or the said stock as collateral therefor, to charge them with the actual amount they have borrowed, with interest at the rate of six per cent. per annum to the 24th day of July, 1895, and to credit thereon a percentage of the value of their stock, after ascertaining the value in the manner hereinbefore alleged as such stock would be entitled to receive as its *pro rata* dividend in the distribution of the assets of the association; and that upon the payment of the balance found to be due, with interest upon such balance from the 24th day of July, 1895, to the date of payment, such interest to be at six per cent., to release and cancel the bonds and mortgages of the member so paying and settling his indebtedness to the association. Upon these

orders, the defendant, Finlayson, paid on his indebtedness for $3,000 borrowed by himself and for $700 borrowed by Fesperman assumed by defendant, the sum of $1,200. After such payments made in the year 1897, he refused to pay any more, alleging that the $3,700 which he and Fesperman had borrowed had already been paid in full. The receivers then brought this suit to enforce against Finlayson what they conceived he owed. It should be stated just here that the suit of Strauss against the said building and loan association had, as ancillary to that in the State of North Carolina, been brought in the county of Richland, in the State of South Carolina, wherein Judge Witherspoon, on the 4th September, 1895, appointed the plaintiffs as receivers, and directed them to file copies of the orders made in the original suit in North Carolina, in the Court of South Carolina, for the information of the Court and all persons interested in said cause." The answer of the defendant denied that the suit of Strauss against the Carolina Interstate Building and Loan Association was brought on behalf of all the shareholders of said association; denied that the plaintiffs, as receivers, were empowered to deduct thirty per cent. from the payments made by this defendant because of losses made by the association; denied that the contract of the association with the defendant was a North Carolina contract, so to speak, but on the contrary was a contract to be construed as contracted for performance in the State of South Carolina, alleged that the contract was usurious, and also alleged that the indebtedness of the defendant had been fully paid. Judge Ernest Gary, who heard the action upon the pleadings, and an agreed statement of facts, decided that the contract of defendant with Carolina Interstate &c. Association was usurious under the laws of both the States of North and South Carolina; that the plaintiffs had no right to deduct thirty per cent. from the aggregated payments of defendant for and on account of losses of the association, for the reason that defendant is not bound by the decree in North Carolina, and was not before that Court.

The plaintiffs appeal from the decree of Judge Gary on the following grounds, namely: "I. His Honor erred in not holding that the contracts of the defendant with the Carolina Interstate Building and Loan Association, of Wilmington, N. C., were North Carolina contracts, and should be enforced under the laws of that State, as construed by its Supreme Court. II. That he erred, after it was admitted that Finlayson was a stockholder in said association, and that the losses upon stock had been found by the North Carolina Court to be thirty per cent., in not making said Finlayson responsible for his share of said losses. III. He erred in holding that because the defendant, Finlayson, was not personally served with process in the Strauss case, that he was not bound thereby, under the decisions of the Supreme Court in said case, to the same settlement that all members of said association were held to be bound to make, and in not deciding the case under the law as stated by said Supreme Court. IV. He erred in holding that the Courts of North Carolina, in equitably winding up the affairs of an insolvent corporation, created by and under the laws of North Carolina, cannot decree an equitable adjustment and settlement, which will be binding upon all the corporators, unless all of said corporators were individually served with process and made parties to the suit. V. While each corporator must be sued, and process served upon him, before he can be made to settle his indebtedness to the association, he erred in holding that in such suit, this defendant was not bound, as to the legality and construction of his contract, by the decisions of the Supreme Court of the State of the contract, and of the jurisdiction to which he voluntarily subjected himself, by becoming a corporator in said association and in borrowing money therefrom. VI. He erred in holding that the settlement directed by the Courts of North Carolina, which the receivers ask to be enforced against defendant, is usurious. VII. He erred in sustaining the plea of usury against the officers of the Court, who are endeavoring to enforce a settlement with defendant, which had been directed by said

Court, and which said defendant had refused to make. VIII. He erred in holding that the original contracts entered into by the defendant, Finlayson, and by Fesperman, his grantor, were usurious under the laws of either North or South Carolina, or that any usurious claim is made in the complaint against defendant. IX. He erred in holding that Finlayson could plead usury against the Fesperman bond and mortgage, and that usury could be pleaded by defendant against these plaintiffs. X. He erred in directing the referee to compute the amount due on bond and mortgage set forth in complaint, under section 1390 of Revised Statutes of South Carolina, and in holding that the claim set up in complaint by plaintiffs against defendant was obnoxious to said section of Revised Statutes. XI. He erred in not granting plaintiffs' judgment of foreclosure for the amount asked in complaint, including ten per cent. as attorney's fees."

We will examine these exceptions in their numerical order. So far as the first exception is concerned, it seems to us that it must be sustained. In *Pollock v. Carolina Interstate Building & Loan Association,* 51 S. C., 420, this Court held that a similar contract to that made by the respondents with the same association was a contract to be performed in North Carolina. *All things being equal,* the contract should be enforced under the laws of North Carolina, as construed by its Supreme Court.

As to the second exception, we might say at the outset that we are not entirely clear that the Circuit Judge was in error on this point, for the decision of the Superior Court, Judge Coble presiding, held that thirty per cent. was proper, but qualified his holding with these words: "This order shall not be binding upon any one concerned therein without his consent to the same, and this order is made without prejudice to those wishing to contest the rule therein prescribed * * *" It certainly is true that Henry W. Finlayson has not consented to this order. Therefore, by its very terms, no liability yet exists against him to pay the thirty per cent., or, what is the same thing

in effect, to allow his payments diminished by thirty per cent. But we cannot see how Finlayson is to escape the consequences of his being a *corporator* in said association, so far as outside creditors of the Carolina Interstate &c. Association are concerned. Indeed, we do not see how he is to escape liability for his *pro rata* share of the losses of said association. However, in the abundance of caution, we will not pass directly upon this question, and as it must go back before the special master—Mr. Shipp—the parties will be granted leave to make this question as to Finlayson's liability for any debt, expense or other liability in closing up such association.

As to the third exception, we may say that a person is not usually bound by the judgment rendered in an action to which he is not made a party. Now, so far as corporations created under the laws of a State are concerned, when it becomes necessary to place them in liquidation, because of their insolvency, for example, certainly the Courts of that State, clothed with jurisdiction in such matters, may properly, by their decrees, wind up all the concerns of such insolvent corporation, and such decrees would be binding and conclusive against all the corporators in such insolvent corporation, so far as the property and other assets of such corporation are concerned, while within the jurisdiction of such Courts of the domicile. We are not by any means prepared to admit that such proceedings and judgments of said domiciliary Courts could, *of themselves,* operate upon persons and property situated in another jurisdiction. In order to affect such persons and property in another jurisdiction, new or ancillary proceedings would be necessary in that other jurisdiction. So, therefore, as far as Mr. Finlayson is concerned in the matter of the property and assets of the Carolina Interstate &c. Association, he is bound and concluded by the action of the Courts of North Carolina, and it is perfectly legitimate for these appellants in this action in the Courts of this State (South Carolina) to fasten

8—55

upon said Finlayson his liability as a corporator upon due proofs of such liability. We mean by the use of the words "due proofs," proofs of all matters of facts contested in the original, and not by records taken from an action to which he was not a party.

As to the fourth exception, we have already held that the Courts of North Carolina could by their judgment conclude Finlayson as a corporator, so far as the assets of the insolvent corporation are concerned; could also wind up its affairs, so as to conclude him, but we still hold that outside of the jurisdiction of the Courts of the State of North Carolina, in order to reach Finlayson or his property, new suits must be brought in this jurisdiction.

As to the fifth exception, we hold that the Circuit Judge was in error in not holding directly that the liability of Finlayson must be fixed as arising under a contract made by him to be enforced in the State of North Carolina.

As to the sixth exception, we cannot say that the Circuit Judge erred in holding that the contract of Mr. Finlayson with the Carolina Interstate &c. Association was usurious, for the laws of the State of North Carolina, as construed by the Supreme Court of that State, clearly fasten the offense of usury upon this association. This is what the Circuit Judge meant in his reference to usury. It could not be that in providing for a plan to have corporators liquidate their share of the deficiency of assets of the association to pay expenses, &c., the sum of money necessary for each corporator to contribute for that purpose under the decree of a Court would be usury.

As to the seventh exception. Under the views we have hereinbefore expressed, it will not be necessary to pass upon this exception.

As to the eighth exception, we have already announced our conclusion that the contracts of Finlayson and his assignee, Fesperman, were usurious both under the laws of the State of North Carolina, as construed by the Supreme Court

of that State. It would certainly be usurious under the laws of this State.

As to the ninth exception. While Mr. Finlayson, as the assignee of Fesperman, could not hold the Carolina Interstate &c. Association to the penalties for usury—because the plea of usury has been held by the Courts of this State as a personal privilege—still, when he comes to settle with the association on a contract which he has made with such association, he can invoke the defense, as a protection as far as it extends, to payments made by himself.

As to the tenth exception. We think the Circuit Judge was in error, as here pointed out. If this is a North Carolina contract, so to speak, and under the laws of that State it is usurious, clearly the penalties for usury as fixed by such laws should be applied by the special master, Mr. Shipp, and not the provisions of our laws touching usury.

As to the eleventh exception. We cannot view the decree of the Circuit Judge as erroneous in the matters set out in this exception. Certainly it was necessary to have a reference in order to learn if there was anything due by the defendant. If there should be found that the defendant owes the plaintiffs nothing, why then no judgment for foreclosure would be proper.

As to that part of the exception relating to the ten per cent., as attorney's fees, we must hold that inasmuch as the Carolina Interstate &c. Association by its conduct—to wit: its insolvency—rendered it impossible for Mr. Finlayson to carry out his contract with such association, that thereby the fault of having to resort to foreclosure proceedings was not that of Finlayson, nor was such fault such as was contemplated in the bond when this ten per cent. attorney's fees were provided, there is no liability on Mr. Finlayson to pay any such ten per cent. attorney's fees.

It seems to me that those persons who hold that when

shares of a building and loan association are pledged as collateral for a loan to a stockholder, such shares no longer fasten upon such borrower any liability therefor, are unmindful of the fact that if Courts should sustain such a position as sound, serious loss would be entailed upon the borrowers; for thereby, they (such borrowers) would forfeit all right to have their indebtedness reduced by the value of such stock at the date the building and loan association fails.

It follows that, in my opinion, the decree of his Honor, Judge Gary, should be modified, and our judgment should read that: "It is the judgment of this Court, that the judgment of the Circuit Court be modified in these particulars herein required, and that the action be remanded to the Circuit Court, so that the special master, Mr. Shipp, may pass upon the issues referred to him, as modified by the judgment of this Court." But the majority of the Court seem to entertain views at variance with those herein expressed by me.

Therefore, it is the judgment of this Court, that the judgment of the Circuit Court be affirmed, but I dissent from such judgment.

Messrs. Justices Gary and Jones *concur* in the dissenting opinion of Mr. Chief Justice McIver.

Mr. Chief Justice McIver *dissenting*. Being unable to concur in all the conclusions reached by Mr. Justice Pope, I propose to state the points upon which I differ from him, and indicate some of the reasons why I cannot agree with him. The action in this case was brought to enforce the performance of a contract, evidenced by the defendant's bond and mortgage, to the Carolina Interstate Building and Loan Association; and the only question, as I understand it, is whether there is anything, and if so how much, still due the association by the defendant upon such contract. It is not an action brought by the receivers of an insolvent corporation to require from a shareholder of such corporation to

contribute his rateable proportion to the fund necessary to pay the debts of such insolvent corporation, for the necessary parties to such an action are not before the Court, and there is no allegation in the complaint that the corporation owes a single debt to any third person. On the contrary, it is simply an action to recover from the defendant a sum of money loaned to him by the association; and the fact that the defendant was a shareholder of the association at the time this loan was made, cannot affect the question; for ever since the case of the *Columbia Building and Loan Association* v. *Bollinger,* 12 Rich. Eq., 124, followed in several other cases, notably *Buist* v. *Bryan,* 44 S. C., 121, it must be regarded as the settled law of this State, that in such a case the relation between the parties is simply that of borrower and lender; and hence the only question is whether there is anything remaining due on the sum of money loaned, after applying all the payments which have been made thereon.

I am, therefore, at a loss to perceive what the action of the Court in North Carolina in the case of *Strauss* v. *The Carolina Interstate Building and Loan Association,* as reported in 23 S. E. Rep., 450, and again in 24 S. E. Rep., 116, has to do with the present controversy, as it is now presented.

But even if I am in error in this, I do not think that the defendant herein was in any way bound by those decisions, at least so far as they authorized the receivers to assess all stockholders thirty per cent. of the amount paid in on their stock, in order to cover the loss and expenses as reported by the receivers, for three reasons: 1st. Because the defendant herein was not a party to that case. 2d. Because the order of the Circuit Judge, from which there was no appeal, contained this express provision: "This order shall not be binding upon any one concerned therein without his consent to the same." 3d. Because the defendant herein had assigned his stock to the corporation long before the insolvency of the corporation occurred. In support of the third reason, it will be sufficient to cite *Pullman*

v. *Upton,* 96 U. S., 328, and *National Bank* v. *Case,* 99 U. S., 628, where it is held that the assignee of stock, even as collateral security for the payment of a debt due by the assignor to the assignee, is liable as a stockholder to the claims of creditors, and that the original holder is no longer liable to such claims.     See, also, *Efird* v. *Piedmont &c. Co., ante.* But in any point of view, it seems to me that the defendant could not, in this case, be liable for the thirty per cent. assessment upon the amount paid on his stock, because there was no competent evidence adduced in this case to show what were the losses and expenses, and what assessment was necessary to meet losses and expenses; for, as I understand, it is conceded that the proceeding in the North Carolina Court, based upon the estimate made by the receivers, was not competent evidence to show the amount of such losses and expenses.     If so, I do not see the propriety of referring this matter back to the special master, as that would, practically, be allowing the apellants another opportunity of offering evidence which they have already had an opportunity to offer, of which they did not see fit to avail themselves.

If, then, the contract which the appellants are seeking to enforce is to be regarded as usurious either under the laws of North Carolina or South Carolina, the next inquiry is, whether the plaintiffs, when they invoke the aid of the Courts of this State to enforce the contract, are not bound to the remedy afforded by the laws of this State.     It seems that by the law of North Carolina the penalty for charging usury is simply the forfeiture of so much of the interest as is in excess of the rate allowed by the law of that State, while here the penalty is a forfeiture of *all* interest as well as costs; and our statute not only provides that the lender of money shall not be allowed to recover, in any Court of this State, any portion of the interest unlawfully charged, but expressly declares that: "The principal sum, amount or value so lent or advanced, without any interest, shall be deemed and taken by the Courts of this

State to be the true legal debt or measure of damages, to all intents and purposes whatsoever, to be recovered without costs." Rev. Stat., 1390. In the face of these explicit provisions, I do not see by what authority the Courts of this State, when called upon to enforce a usurious contract for the loan of money, can render any other judgment except for the principal sum loaned, after deducting all payments made thereon, without any interest or costs. Otherwise, our Courts would be undertaking to do that which they are expressly forbidden, by statute, to do. It is contended, however, that this is a North Carolina contract, and must, upon the principle of comity, be governed by the laws of North Carolina, by which the lender of money upon a usurious contract is entitled to recover the amount loaned with lawful interest. Assuming, for the present, that this is a North Carolina contract, there is no doubt that the rule of comity is well settled, that when a contract is made in one State, or is to be performed in such State, its validity and construction is to be determined by the laws of that State. But to this rule there is an exception, as well settled as the rule itself, which is thus stated by that learned jurist, Chancellor Kent, in his Commentaries: "That no people are bound, or ought to enforce or hold valid in their Courts of justice, any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or *violates a public law*" (italics mine). See 2 Kent. Com., 458, recognized and followed in *Thornton* v. *Dean,* 19 S. C., at page 587; *Gist* v. *Telegraph Co.,* 45 S. C., at page 369. But as is said by Mr. Justice McGowan, in delivering the opinion of the Court in *Thornton* v. *Dean, supra:* "As to all matters relating to the remedy, each State insists upon enforcing its own laws;" and as is said in 3 Am. & Eng. Ency. of Law, 1st edition, at page 561 : "The law to be applied to the remedy is the *lex fori,* at the time such remedy is sought." And again on the same page : "Where contracts are made in one place, and to be performed in another, they are to be governed by the law of the place of performance as to validity,

nature, obligation and interpretation. But the remedy upon it will be governed by the law of the State in which a remedy is sought." And again at page 578 of the same volume, it is said: "Where the laws of two States are brought into conflict, the rule is, that the laws prevailing where the relief is sought must have the preference. The rule that the laws relative to the binding force of a contract form a part of the contract to secure the remedy to the creditor, does not extend so far as to carry the remedy into another jurisdiction, and regulate the mode of enforcement of a contract in an action in the Courts of another State." The following extract from the opinion of Evans, J., acting as the organ of the Court, in *Pegram* v. *Williams,* 4 Rich., at page 224-5, will be found instructive: "The nature, obligation and construction of contracts are to be governed by the *lex loci contractus,* but the remedies by which contracts are enforced, are to be according to the *lex fori,* which is strictly territorial in its operation (citing several sections from Story in Conflict of Laws). We all agree, says Mr. Justice Heath (1 Bos. & Pul., 142), that in construing contracts, we must be governed by the laws of the country in which they are made; for all contracts have relation to such laws. But when we come to remedies it is another thing; they must be pursued by the means which the law points out where the parties reside. The laws of the country where the contract was made can only have reference to the nature of the contract, not to the mode of enforcing it. In *De LaVega* v. *Vianna* (1 B. & Ad., 284), Lord Tenterden said: 'A person suing in this country, must take the law as he finds it. He cannot, by any regulation of his own country, enjoy greater advantages than other suitors here. He is to have the same rights which all the subjects of this kingdom are entitled to.' Judge Story, in his treatise on the Conflict of Laws, sec. 556, says: 'It is universally admitted and established that the forms of remedies, and the modes of proceeding, and the execution of judgments, are to be regulated solely and exclusively by the laws of the place where the action is insti-

tuted, or, as the civilians express it, according to the *lex fori.'* And in sec. 557, he says: 'All that a nation can, therefore, be justly required to do, is to open its own tribunals to foreigners in the same manner and to the same extent as they are open to its own subjects, and to give them the redress, as to rights and wrongs, which it deems fit to acknowledge in its own municipal code, for natives and residents.' This is what is meant by the comity of nations, and I do not find it has ever been extended beyond what is here said." So, also, it was said by Johnston, Ch., in delivering the opinion of the Court of Errors, in *LePrince* v. *Guillemot,* I Rich. Eq., at pp. 211-2: "The general doctrine is reasonably settled, that the validity and construction of a contract are, throughout the world, to be determined by the laws of the country where it was entered into (especially if, as in this instance, it was intended to be executed there), though its lien and operation, and all priorities of rights under it, are generally limited to that country; and in enforcing or executing it, the tribunals of other countries are not bound to give it any effect, so far as it may contravene the policy of their own States." Accordingly, it is well settled that questions arising under the statute of limitations are to be determined by the *lex fori,* and not by the *lex loci contractus.* See *McElmoyle* v. *Cohen,* 13 Peters, 324; *Levy* v. *Boas,* 2 Bail., 217, cited with approval in *Pegram* v. *Williams, supra; Ruggles* v. *Keeler,* 3 Johns., 261. The reason is obvious: The Courts of this State cannot *render* judgment upon contracts, when the right of action is barred by our statute of limitations, even though it may not be barred by the laws of the State where the contract was entered into or where it was to be performed, because the laws of this State forbid it. For the same reason, where an action is brought in the Courts of this State upon a usurious contract, no judgment can be rendered for any interest or costs, because the laws of this State expressly forbid it. Again, in 27 Am. & Eng. Ency. of Law, 1st edition, at page 936, it is said: "The general rule that the penal provisions of a statute

have no extra-territorial operation, and will not be enforced outside of the State where enacted, applies to penalties imposed by usury laws." If, therefore, it be true, as it is said, that by the laws of North Carolina the penalty for charging usury is the forfeiture of all interest in excess of the legal rate, while here the penalty is the forfeiture of *all* interest, under the rule above stated, the latter penalty must be enforced in an action brought in the Courts of this State upon a usurious contract, notwithstanding the fact that such contract may be a North Carolina contract. I think, therefore, that his Honor, Judge Ernest Gary, was clearly right, after sustaining the plea of usury, in directing the special master, "to compute the amount due on the bond and mortgage set forth in the complaint, under the statute law of this State, Revised Statutes, sec. 1390."                    ,

For these reasons I am unable to concur with Mr. Justice Pope in the views which he has taken of the several points hereinabove considered, and, on the contrary, I think the judgment of the Circuit Court should be affirmed.

If there was any error on the part of the Circuit Judge, it was in not holding that the contracts sued upon were North Carolina contracts. But as it is conceded that the plea of usury must be sustained, whether the contracts were North or South Carolina contracts, such error (if it be an error) is clearly harmless, and would not justify a reversal or even a modification of the judgment below. It may be as well to say that here lies the marked difference between the case now under consideration and the cases of the *Equitable B. & L. Association* v. *Vance,* 49 S. C., 402, and the same plaintiff v. *Hoffman,* 50 S. C., 303; for in those cases, after it was determined that the contracts sued upon were Georgia contracts, it followed necessarily that they were to be construed under the Georgia law, by which there was no usury in those contracts; while here it is conceded that the contract under consideration was usurious, whether construed under the laws of North or South Carolina. But I am not prepared to admit that even this was

error.   The only authority cited to sustain the plaintiffs'
first exception, raising this question, is *Pollock* v. *Associa-
tion,* 51 S. C., 420.   As I did not sit in that case, being dis-
qualified, I know nothing of that case except what appears
in the official report.   There I see that the majority of this
Court concurred only in the result; and, as it appears to me,
that there were other grounds upon which such a concur-
rence might have rested, than the conclusion of the writer
of the opinion that the contract there in question, similar to
this, was a North Carolina contract, I do not know that it
has been *authoritatively* decided that the contract here in
question is a North Carolina contract.   If it still be an open
question, it seems to me that there is great force in what was
said by the North Carolina Court in *Rowland* v. *Old Domin-
ion Building & Loan Association,* 18 S. E. R., 965.   The
defendant, it seems, was a Virginia corporation, and one of
the questions was whether the case was to be governed by
the laws of Virginia or by the laws of North Carolina.   In
considering that question, the Court used the following lan-
guage: "It is in no true sense a Virginia contract.   The
labored efforts of the association to make it so appear, but
add to the conviction that it is not so in fact.   Where a
party litigant in the Courts of this State asserts that his
rights are to be adjudicated, not by the laws of this State,
but by those of another; that a contract illegal here shall be
enforced because it is legal under the laws of another forum,
he must be able to show clearly and conclusively that his case
is one that entitles him to make such a demand.   In this
case, the borrower was in this State; he applied for the loan
here; there was a local board of managers here; it had a
treasurer; the money was paid to the borrower here; he
secured its repayment by a mortgage on land situated here;
and the mortgage was executed here.   Calling it a Virginia
contract does not make it one.   Sending the application to
the 'home office,' as it is called; remitting the money from
Richmond; calling the local board and its treasurer the
agents, not of the corporation, but of the members who live in

that locality; providing in the bond that it shall be paid in
Virginia—all these things cannot enable the foreign corpo-
ration to evade the usury laws of this State." This lan-
guage is directly applicable to the facts of this case. Of
course, I do not cite this case as *authority,* for, according to
my view, it is not authority here. It is only cited for the
force of the views there expressed, not only as to this imme-
diate question, but also, in another part of the opinion which
I have not quoted, for the clearness with which it is shown
that such a contract as that here in question is usurious.
But as I do not consider that the question whether this is a
North or South Carolina contract is of any practical conse-
quence in this case, I need not say more.