13818

ELLIS v. ATLANTIC COAST LINE R. CO.

(174 S. E., 19)

Before SHARKEY, J., Civil Court, Florence, September, 1928.

*Messrs. M. C. Woods* and *E. S. Oliver,* for appellant,

*Messrs. McEachin & Townsend,* for respondent,

April 2, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The appellant, railroad company, maintained for the benefit of its employees a relief department, in which was created a relief fund in which the members were insured against sickness and injuries. The respondent was a member of the relief department and insured therein. September 1, 1928, he brought his action to recover disability benefits which he alleged were due to him under the terms of his policy in the relief fund of the relief department. The case was tried at the February, 1932, term of the Civil Court of Florence County, and resulted in a directed verdict for the defendant. On appeal, this judgment was reversed, and the case was remanded to the Civil Court of Florence County for a new trial. The plaintiff amended his complaint, and the defendant served an amended answer, and upon the issues thus joined the case was tried at the September, 1933, term of the Court, and a verdict rendered in favor of the plaintiff. On the trial, counsel for defendant made a motion for a

directed verdict on grounds set out in the record, which motion was refused. After verdict rendered, defendant's counsel moved for a new trial, which motion was refused. From the judgment defendant appeals on the several exceptions set out, which we do not think it is necessary for us to discuss severally.

The complaint alleged the total disability from a gunshot wound. The defense in its last analysis was that the rules of the relief department, which governed the certificate, provided that, if the sickness arose from immoral practices, or the injuries which were received occurred in a liquor saloon, or a gambling house, or a place of ill repute, the insured could not recover, and that plaintiff's injuries were received in a house of ill repute.

The exceptions which charge error to the trial Judge for refusing to grant the motion for directed verdict on the ground that there was no evidence to take the case to the jury must be overruled. It is not proper that we discuss the evidence. It is sufficient to say that there was evidence to take the case to the jury.

Appellant charges error for that the trial Judge refused its motion for directed verdict made on the ground that the provisions of the contract of insurance required plaintiff to exhaust his remedies under the contract before bringing action in the Courts; that under the contract the respondent was bound to appeal to the advisory council from the adverse decision of the superintendent; that such an appeal was a condition precedent to bringing legal action.

There are two lines of decisions, differing diametrically, on this subject. We are inclined to think that the greater weight of the authority is in favor of that which holds that a regulation of this sort cannot debar one from his legal right to apply to the Courts for redress of wrongs or the enforcement of rights.

These exceptions cannot be sustained.

There are exceptions which charge error for not granting the motion for a new trial on the ground that a citizen had been sworn and served on the jury who had not been drawn in accordance with law; or on other grounds.

We think the order of the trial Judge correctly disposed of the questions made by these exceptions.

The exceptions which charge error to the trial Judge because he placed on the defendant the burden of proving by the preponderance of the evidence that the plaintiff received his injuries in a house of ill repute, that he knew it to be such a place, and that he went there for an unlawful or immoral purpose, must be sustained.

The trial Judge charged the jury in this language: "That among the regulations * * * of the Relief Fund is one to the effect that benefits shall not be payable for sickness or injuries resulting from immoral practices or due to injuries received in any liquor saloon, gambling house or other disreputable resort. * * * That is a good defense on the part of the Railroad Company, provided the Railroad Company proves by the greater weight of the evidence this injur did occur in this disreputable house, *in which house the plaintiff was present for an immoral purpose, and I charge you that the burden of proof has shifted to the extent of requiring the defendant to prove its affirmative defense.*"

His Honor goes on to state to the jury that the Supreme Court has held to this effect: "You must first ascertain * * * whether this particular house in which plaintiff sustained his injury was a bawdy house. Now suppose you find that it was, still that does not constitute a complete defense on the part of the railroad company unless you go further and find * * * that he was there at the time for an immoral purpose. * * * If you find, however, that the defendant has proven by the greater weight of the evidence that he was injured in a disreputable house, *and that he was there at the time for an immoral purpose,* that would

defeat a verdict for the plaintiff. As a matter of fact if you should find he did sustain this accidental injury and that he is permanently disabled and that you should find, on the contrary, *placing the burden of proof on the defendant* that he was injured in this kind of a place, *and that he was there for immoral purposes* it wouldn't make any difference how great a disability he was suffering under, he would not be entitled to a verdict." (All italics added.)

His Honor fell into error when he said the Supreme Court had held that the burden was on defendant to prove that the plaintiff was in the bawdy house for immoral purposes. What this Court said in the former appeal, 169 S. C., 343, see page 347, 168 S. E., 860, 861, was that it was error for the trial Judge to direct a verdict for the defendant on the ground that plaintiff should have known the character and reputation of the house he went to. This Court said there was evidence that plaintiff went to the house without knowing its character, and that the Judge could not say as a matter of law that plaintiff "should have known the character of the house in which he was injured." In fact, the Court sent the case back in order that the plaintiff might have the opportunity to prove, if he could, that he was in this house for a lawful and moral purpose. He and his able counsel understood and appreciated this, and put up evidence in chief to try to show that he went to the ill-famed house to rent a storeroom.

Under the unexplained terms of the certificate of the relief fund, the plaintiff was debarred of recovery if it was proved that he received his injuries in a place of ill repute. Under the construction given that certificate by this Court, it was deemed to be too narrow an interpretation to say that the mere proof that one was injured in a house of ill repute would bar recovery. He might have been there for a perfectly lawful purpose. It was only fair then that the claimant be given an opportunity to show what his purpose was in visiting the house. No one knew better than he what he went there for.

It was harmful error to put on the defendant the burden of proving the motive and intent of respondent in his visit to this place.

One cannot look into the mind of another and tell the motive of his actions.

"The burden of evidence as to any particular fact rests, generally speaking, upon him to whose case the fact is material." 22 C. J., 22.

When the defendant introduced abundant evidence to show that the house in which the plaintiff was injured was a house of ill repute, it had brought itself within the exact language and terms of the contract, which, standing alone, would absolve it of liability to the plaintiff. To whom then was it material to show that plaintiff was in the wrong place, for a lawful purpose? Clearly, the plaintiff, and, hence the burden was on him to prove his purpose in being in the house of ill fame.

The judgment is reversed, and the case remanded.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUTICE W. C. COTHRAN concur.