## 14074

### LIVINGSTON v. ATLANTIC COAST LINE R. CO.

(180 S. E., 343)

386

*Messrs. Thomas W. Davis* and *McKay & Manning,* for appellant,

*Messrs. J. A. Hutto, J. Hughes Cooper* and *Richard T. Maher,* for respondent

May 29, 1935.

The opinion of the Court was delivered by Mr. Justice Bonham.

The appellant railroad corporation maintains for the benefit of its employees a relief department, the headquarters of which are at Wilmington, N. C. The respondent was in the employ of the defendant first as a fireman and then as an engineer, with his place of employment centering at Florence, S. C. In order to become a member of the relief department, it is necessary for the employee to make written application to the relief department and stand a physical examination. These things respondent did at Florence, S. C., and his application was forwarded to the relief department headquarters at Wilmington, N. C. The application was dated May 21, 1919, and approved by the superintendent of the relief department at his office at Wilmington, N. C., June 13, 1919, to take effect the 21st day of May, 1919. The measure of relief to which the member is entitled, and the amount of fee or premium which he pays, is determined by the grade of his employment and the amount of his pay. As he advanced in promotion, the plaintiff in this action filed two additional applications which were approved by the superintendent of the relief department, the effect of which was to increase the amount of relief to which he would be entitled and to increase the amount of the premium he must pay, but did not otherwise alter the terms of the contract made by the acceptance and approval of the first application.

The plaintiff brought action in the County Court of Richland County on a claim of total disability.

Defendant by answer pleaded:

(1) A general denial and prior payment in part of benefits under the contract.

(2) Failure of plaintiff to appeal to the advisory committee of defendant as provided by the contract sued on.

(3) Relief of plaintiff and termination of the contract sued on.

(4) Failure of plaintiff to give proper notice and proof of disability.

(5) Failure of plaintiff to be examined by or report to the medical examiner of the defendant, as required by the contract.

(6) Failure of plaintiff to produce positive evidence of acute or constitutional disease in addition to subjective symptoms.

(7) That the contract sued on is a North Carolina contract, and all questions relating to its validity and reasonableness and to the enforcement of its terms and provisions and the rights of the parties are governed and controlled by North Carolina law and decisions.

The case was tried by Judge Whaley and a jury, and resulted in a verdict for plaintiff. Motions for directed verdict and for new trial were made and refused.

The defendant appeals upon 28 exceptions, but not so many issues are made thereby.

The first question demanding consideration is this: Is this a North Carolina contract, and governed by North Carolina laws and the decisions of the North Carolina Courts?

On the trial, the defendant offered in evidence the case of *Nelson v. Atlantic Coast Line Railroad Co.*, decided by the Supreme Court of North Carolina and reported in 157 N. C., 194, 72 S. E., 998, 52 L. R. A. (N. S.), 829. Plaintiff did not require formal proof for the introduction

of the case, but objected to it on the ground of its ir-relevancy, as this was a South Carolina contract.

The trial Judge sustained the objection on the ground thus stated.

Was he right? Where was the contract made?

What attends the making of a contract? The offer stating the conditions or terms; the acceptance of the offer.

In the present case, the plaintiff made application at Florence, S. C., to the relief department of defendant at its home office at Wilmington, N. C., to become a member of the relief department, stating the terms and conditions by which he agreed to be bound. One of the conditions and terms proposed by plaintiff in his application was in this language: "I also agree, that this application, upon approval by the superintendent of the Relief Department, shall make me a member of the Relief Fund on and from the date specified in such approval, *and constitute a contract between myself and the said Company.* * * * (Italics added.)

The acceptance and approval of this proposal was made at Wilmington in the State of North Carolina. Instantly, *ipso facto,* the contract became complete. All that remained to do was to notify plaintiff of the fact and to send him his certificate of membership, and copies of the rules and regulations, which he states in his application he had already seen.

It does not necessarily follow that the place where the contract is made determines the place of its enforcement. In this particular instance we think the internal facts show that the place of enforcement of this contract is at Wilmington, N. C. By the terms of the contract the premiums due by the member of the relief fund are deducted from his pay check at Wilmington. He does not send them in. In the event that he is entitled to payment for disability, payment is made by check sent him from Wilmington. It is in evidence that the plaintiff received some such checks. There is nothing further to be done in South Carolina to consummate or

ratify the contract or to make this State the place of its enforcement. This is not an insurance contract. The defendant is not in the attitude of an insurance company for it sown benefit or business advantage. It gets no part of the premiums paid by the members of the relief fund. On the contrary, when the money in the relief fund is insufficient to pay its obligations to employees, the defendant advances the necessary funds, depending for reimbursement on the coming in to the relief fund of sufficient money for that purpose.

The respondent's contention is that the place of performance of the contract is fixed by the provisions of Section 7773 of the Code of Laws of South Carolina 1932, which section is in these words: *"Condition Precedent to Doing Business in This State.*—It shall be a further condtion precedent to the right of any such corporation to do business in this State, that it shall be taken and deemed to be the fact irrebuttable, and part and parcel of all contracts entered into between such corporation and a citizen or corporation of this State, that the taking or receiving, from any citizen or corporation of this State, of any charge, fee, payment, toll, impost, premium or other moneyed or valuable consideration, under or in performance of any such contract, or of any condition of the same, shall constitute the doing of its corporate business within this State, and that the place of the making and of performance of such contract shall be deemed and held to be within this State, anything contained in such contract or any rules or by-laws of such corporation to the contrary notwithstanding."

Two answers to that position are unanswerable.

As just said, this relief department is not an insurance company engaged in business in this state for profit. The sections 7773, is designated to protect citizens of South Carolina dealing with foreign corporations of the character of such insurance companies. Hence it has no application

here. The matter is set at rest by the provisions of Section 7788, Code South Carolina 1932, to the effect that the provisions of the chapter containing these two sections "shall in nowise apply to such railroad or railway companies which have already complied with the prior laws of this State in force at the time."

The record discloses that the defendant was operating in South Carolina with its consent before the adoption of the provisions of this chapter.

The provisions of Section 7773 are stated to be: "Condition Precedent to Doing Business in This State."

The section is not applicable in this case.

What law is applicable in this case? That of North Carolina or that of South Carolina?

It is fundamental that unless there be something intrinsic in, or extrinsic of, the contract that another place of enforcement was intended, the *lex loci contractu* governs. If the contract be silent thereabout, the presumption is that the law governing the enforcement is the law of the place where the contract is made.

"The act of the parties in entering into a contract at a particular place, in the absence of anything shown to the contrary, sufficiently indicates their intention to contract with reference to the laws of that place; hence the rule as it is usually stated is that a contract as to its validity and interpretation is governed by the law of the place where it is made, the *lex loci contractu;* or more accurately, that contracts are to be governed as to their nature, validity and interpretation by the law of the place where they are made, unless the contracting parties clearly appear to have had some other place in view." 13 C. J., 248.

In the case of *Scudder v. Union National Bank,* 91 U. S., 406, 412, 23 L. Ed., 245, the question turned upon this proposition: Scudder agreed in parol to accept a bill of exchange when presented to him at the bank in Chicago. He defaulted, and action was brought. He demurred for that

the acceptance was not in writing. The Court held that inasmuch as the place of acceptance was in Illinois, and in that state a parol acceptance of such bill was lawful, the demurrer could not be sustained. The case went to the Supreme Court of the United States, where it was said: "Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance."

Since we have determined that the place of performance of the contract was in North Carolina, it follows that the law of that state governs the construction and the performance of the contract in this case.

The defendant offered in evidence the case of *Nelson v. Atlantic Coast Line Railroad Co., supra,* which was ruled out by the trial Judge on the ground that this was a South Carolina contract, and therefore the case offered in evidence from the Supreme Court of North Carolina was irrelevant. We think this was error. The law of North Carolina, as interpreted by its Supreme Court in the offered case, was especially applicable to this case. There the action was against the defendant appellant in this case, and involved the interpretation of a contract exactly similar to that which we are considering. The essential question with which we are concerned in the determination of our problem is this: Was the plaintiff bound by the terms of his contract to submit his claim to the advisory committee of the relief department before he brought suit? This identical question was decided by the Supreme Court of North Carolina in the case of *Nelson v. Atlantic Coast Line Railroad Company,* 157 N. C., 194, 72 S. E., 998, 52 L. R. A. (N. S.), 829.

The same question submitted to that Court and decided by it is thus stated in the syllabus: "Under regulations of the relief department of a railroad company requiring controversies to be submitted to the superintendent and making

his decision, or that on appeal therefrom to an advisory committee, conclusive, suit cannot be maintained to recover benefits covering a period during which such officers found the beneficiary to be no longer under disability, in the absence of fraud and undue influence."

The questions of fraud and undue influence are not here involved in our case.

It is needless to burden this opinion with the reading into the record of the *Nelson case, supra*. It is sufficient to say that it plainly holds that in such case as this the condition of the contract is imperative that before the member of the relief fund may bring suit on his claim of disability, he must submit his claim to be determined in the manner prescribed by the regulations of the relief fund. This much of the opinion may be incorporated here:

*"The authorities upon this question* are in much conflict. All seem to agree that when the regulation of an organization relates to its internal policy, or to a question of membership, the action of the organization, according to the regulations, is, in the absence of fraud, conclusive; but there is a difference of opinion as to what is a property right and as to the effect of the regulation when a property right is involved. Some Courts hold that, when a property right is involved, the member must first seek redress inside of the order, and that, having done so, he may then resort to the Courts. Others hold that, if there is no inhibition against resorting to the Courts, he may do so in the first instance. Others that he must resort to the order first, if the regulations so require, and then to the Courts, although the regulations say that the decision by the tribunal in the order shall be final. And others that the decision rendered according to the regulations of the order is final and conclusive. [Citing cases.]   *   *   *

*"We will not quote further from the cases cited, and there are others to the same effect, but they sustain fully the contention of the defendant that it was the duty of the plaintiff*

*to seek redress inside the department, and that the decision of the advisory committee upon his appeal is conclusive upon him.* [Italics added.]

"The doctrine seems to us to be reasonable and just, and necessary to the maintenance, in benefit societies and fraternal orders, of provisions conferring benefits on sick or disabled members.

"If it should be held otherwise, such societies would be subjected to litigation each time a member was dissatisfied and funds raised for wise and beneficent purposes would be wasted."

This Court has distinctly ruled on this principle in the case of *Cantey v. Philadelphia Life Ins. Co.,* 166 S. C., 181, 164 S. E., 609, 610, where are cited the authorities from this State which sustain the proposition:

"Section 1 of Article 4 of the Constitution of the United States provides that: 'Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.'

"The defendant has offered in evidence the statute laws of North Carolina pertaining to and governing the specific questions involved in this appeal, relating to and regulating matters of insurance arising therein. Section 6287, Article 3, c. 106, Consolidated Statutes of N. C., provides that: 'State law governs insurance contracts. * * * All contracts of insurance the applications for which are taken within the state shall be deemed to have been made within this state and are subject to the laws thereof.'

"There is no dispute that the application for insurance in the present case was taken in North Carolina; there is no dispute that the policy when issued in Philadelphia was sent to the agent of the company and delivered to the insured at his place of residence, Winston-Salem, N. C. He died at a hospital in Columbia, S. C., but there is nothing in the pleadings nor in the proof to show, or even suggest, that he had abandoned his residence in North Carolina. It

is a fair inference that he retained his citizenship in that state.

"In the case of *Columbia Building & Loan Association v. Rice,* 68 S. C., 236, 47 S. E., 63, 64, 1 Ann. Cas., 239, Mr. Justice Woods, speaking of the contract of insurance, said:

" 'Section 4, are. 11. * * * it as follows: 'Members may, if they desire, make monthly payments on stock to the local treasurer, but such local treasurer shall be the agent of the members, and not of the association." The defendants insist this is a mere subterfuge to avoid the usury laws of the state, and, even if it is not, the contract is nevertheless to be construed as a South Carolina contract. A contrary vieiw was taken by this Court in *Pollock v. Association,* 51 S. C., 420, 29 S. E., 77, 64 Am. St. Rep., 683, *Turner v. Association,* 51 S. C. [33], 37, 27 S. E., 947, and *Tobin v. McNab,* 53 S. C. [73], 75, 30 S. E., 827. It is true, in *Meares v. Finlayson,* 55 S. C., 105, 32 S. E., 986, Chief Justice McIver expressed disatisfaction with the decison of *Pollock v. Association, supra,* but expressly said that the point we are now considering was not involved in the case he had under discussion. In the later case of *Interstate Building & Loan Association v. Powell,* 55 S. C. [316], 320, 33 S. E., 355, the provisions of the mortgage and of the by-laws, so far as they relate to this question, were practically the same as those involved in this case; and it was there held by a unaminous Court that the contract was to be performed in Georgia, *and the laws of that state must govern its validity and construction."* (Italics added.)

" 'It is a well-recognized principle of law in this state, as well as other jurisdictions, that the law of the place where a contract is made determines its validity. This rule is well and succinctly stated, as follows: "The validity and construction of a contract are determined by the law of the place where it is made. Accordingly, it is quite generally held that a contract valid in the place where made is valid

everywhere; and that a contract invalid where made is invalid everywhere; and the validity or invalidity of a contract so determined will, on principles of comity, be recognized wherever it is sought to be enforced, even though the law of the forum would have determined otherwise if applied." '

"5 Cal. Jur., 449. *Mercantile Acceptance Co. v. Frank* (In Banc), 203 Cal., 483, 265 P., 190, 57 A. L. R., 697 and numerous cases cited.

" 'In the absence of special provision in the contract to the contrary, a contract is to be construed in accordance with the law of the state where it is made.' *Coderre v. Travelers' Ins. Co.,* 48 R. I., 152, 136 A., 305, 306. 54 A. L. R., 512, citing *Leonard v. State Mut. Life Assurance Co.,* 27 R. I., 121, 61 A., 52, 114 Am. St. Rep., 30."

For the reasons stated, it was error to refuse to admit in evidence the case of *Nelson v. Atlantic Coast Line Railroad Company.*

It was error also for the reason that it deprived defendant of the benefit of due process of law, contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States.

The Supreme Court of the United States in the case of *Hartford Accident & Indemnity Co. v. Delta & Pine Land Co.,* decided April 9, 1934, and reported in 292 U. S., 143, 54 S. Ct., 634, 636, 78 L. Ed., 1178, 92 A. L. R., 928, has illuminated the questions involved in our case in an opinion written by Mr. Justice Roberts. It appears from the record in that case that Delta Pine Land Company sued Hartford Accident & Indemnity Company in a Circuit Court of Mississippi on a bond made to the Delta, etc., Company by the Hartford, etc., Company, guaranteeing one Harris the treasurer of the Mississippi company, who had embezzled funds of his employers. The defendant pleaded that the contract was made in Tennessee and was to be construed by the laws of that state; to this plea the plaintiff demurred, and the demurrer was sustained. Judgment for plaintiff in

the Circuit Court was sustained by the Supreme Court of Mississippi, 169 Miss., 196, 150 So., 205, which held that the statute of Mississippi (of the nature of the South Carolina statute involved in our case) made the contract a Mississippi contract. On appeal, the Supreme Court of· the United States said, *inter alia:* "It is true the bond contemplated that the employee whose faithfulness was guaranteed might be in any state. He was in fact in Mississippi at the date of loss, as were both obligor and obligee. The contract being a Tennessee contract and lawful in that state, could Mississippi, without deprivation of due process, enlarge the appellant's obligations by reason of the state's alleged interest in the transaction? We think not. Conceding that ordinarily a state may prohibit performance within its borders even of a contract validly made elsewhere, if the performance would violate its laws (*Home Ins. Co. v. Dick, supra,* page 408 of 281 U. S. [397], 50 S.·Ct., 338, 74 L. Ed., 926, 74 A. L. R., 701), it may not, on grounds of policy, ignore a right which has lawfully vested elsewhere, if, as here, the interest of the forum has but slight connection with the substance of the contract obligations. Here performance at most involved only the casual payment of money in Mississippi. In such a case the question ought to be regarded as a domestic one to be settled by the law of the state where the contract was made. A legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the forum, regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment. *Ætna Life Insurance Company v. Dunken* [266 U. S., 389, 45 S. Ct., 129, 69 L. Ed., 342], *supra; Home Insurance Company v. Dick, supra.* Cases may occur in which enforcement of a contract as made outside a state may be so repugnant to its vital interests as to justify en-

forcement in a different manner. Compare *Bond v. Hume,* 243 U. S., 15, 22, 37 S. Ct., 366, 61 L. Ed., 565. But clearly this is not such a case."

The respondent argues that this case is controlled by the opinion of this Court in the case of *Ellis v. Atlantic Coast Line Railroad Co.,* 172 S. C., 338, 174 S. E., 19, 20. The contention is not valid. It is true that in that case the issue was made that plaintiff had not exhausted his remedies under his contract before bringing action; and it is true this Court said this: "There are two lines of decisions, differing diametrically, on this subject. We are inclined to think that the greater weight of the authority is in favor of that which holds that a regulation of this sort cannot debar one from his legal right to apply to the Courts for redress of wrongs or the enforcement of rights."

In that case the question of the place of making and enforcement of the contract was not made, and hence was not decided. Without objection the case was tried as if the contract were a South Carolina contract. The principle therein announced is still applicable as applied to South Carolina contracts, or such contracts of others as are within the lawful purview of South Carolina statutes.

It is a condition of the contract that a member applying for disability benefits must submit his claim to the superintendent of the relief department. If his decision be adverse to the claim, the member must appeal to the advisory committee, and is bound by that decision. We have found this to be a North Carolina contract, and governed by North Carolina law and the decisions of North Carolina Courts. The Supreme Court of that State has said in *Nelson v. Atlantic Coast Line Railroad Co., supra,* that the conditions of a contract exactly similar to that in this case are obligatory, and the failure to comply with them bars recovery. It is not denied that the respondent in this case did not appeal to the advisory committee from the rul-

ing of the superintendent. It is inevitable that he is debarred of the right of recovery in this action.

The judgment of the Court below is reversed, and the complaint is dismissed.

MR. CHIEF JUSTICE STABLER, MR. JUSTICE CARTER and MESSRS. ACTING ASSOCIATE JUSTICES WM. H. GRIMBALL and G. B. GREENE, concur.