717 S.E.2d 103

**TEAM IA, INC., Appellant,**

v.

**Cicero LUCAS, George Lawson, IV, and 5 Point Solutions, LLC, Defendants,**

**Of whom Cicero Lucas is Respondent,**

**Cicero Lucas and George Lawson, IV, Third–Party Plaintiffs,**

v.

**Brent Yarborough and Team IA, Inc., Third–Party Defendants.**

**No. 4889.**

Court of Appeals of South Carolina.

Submitted June 1, 2011.

Decided Sept. 14, 2011.

Withdrawn, Substituted and Refiled Oct. 20, 2011.

238

Joel W. Collins, Jr., Robert F. Goings, and Christian Bosel, all of Columbia; and S. Clay Keim, Jeffrey A. Lehrer, and Lucas J. Asper, all of Spartanburg, for Appellant.

Terry Richardson, Jr., Daniel S. Haltiwanger, and Christopher J. Moore, all of Barnwell, for Respondent.

GEATHERS, J.

This is an appeal from a circuit court order granting partial summary judgment to Respondent Cicero Lucas on the grounds that the non-competition and non-solicitation clauses in an employment agreement he signed were overly broad and unenforceable. Appellant Team IA, Inc. (Team IA) argues the circuit court erred in granting partial summary judgment to Lucas, when (1) material facts were in dispute as set forth in the Supplemental Affidavit of Brent Yarborough; (2) the circuit court applied Georgia law despite the presence of a choice of law provision in the agreement signed by the parties requiring the application of South Carolina law; (3) the circuit court arguably would have reached a different result had it applied South Carolina law to evaluate whether the non-solicitation clause was an unreasonable restraint on trade; (4) no evidence was presented that the non-competition provision would improperly curtail Lucas's efforts to earn a livelihood; and (5) the circuit court could have limited the nationwide geographic restriction in the non-competition clause to the less expansive restricted territory alternatively defined in the employment agreement as South Carolina, North Carolina, Georgia, and Alabama. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

Team IA conducts business in the microfilm, data entry, software, hardware, consulting, and related services industries. Team IA markets its business on a nationwide basis through electronic and print media, including the internet, attendance at trade shows, submission of bids, direct sales,

and other means. In April of 2001, Team IA hired Lucas as a sales representative for the company. The parties signed an employment agreement, which contained the following clauses:

A) Non–Solicitation Agreement

1) Employee agrees and acknowledges by signing below, that while employed by Employer and for a period of twelve (12) months following termination of Employee's employment with Employer, regardless of who initiates said termination, that he will neither directly [n]or indirectly, for himself or on behalf of any other person, firm, or business entity, solicit, attempt to solicit, sell to, or attempt to sell to any Employer CUSTOMER any products or services that are competitive with Employer products or services.

2) For the purposes of this Agreement, the term *"CUSTOMER" shall mean any person, firm, or business entity* who currently has a system or product which was designed or installed by or is being serviced by Employer; or who has purchased goods or services or who has contracted to purchase goods or services from Employer during the twelve (12) months prior to Employee's separation from employment; or who is an Employer prospect who *has been contacted and offered business services by Employer or its employees within the last twelve (12) months.*[1]

. . . .

B) Covenant Not to Compete

1) In order to prevent the improper disclosure or use of confidential and proprietary information and other trade secrets, and to protect the Employer from unfair competition, Employee agrees that, absent the prior express written consent of the Employer, while employed by Employer and for twelve (12) months immediately following the resignation or termination of his employment with the Employer, regardless of who initiates separation from employment, Employee shall not, directly or indirectly, by himself, or through or on behalf of any other person, firm,

---

1. We note that the non-solicitation clause in this agreement appears to prohibit contact with both former customers and former prospective customers of Team IA.

partnership, company, corporation, representative or agent, within the geographical territory (hereinafter, the "RESTRICTED TERRITORY") set forth below, solicit, attempt to solicit, sell, or attempt to sell, provide, or attempt to provide COMPETING SERVICES as defined below.

Recognizing that Team IA competes on a nationwide basis, the Parties to this agreement hereby agree that for the purposes of this Agreement, *the "RESTRICTED TERRITORY" shall consist of the entire continental United States. In the alternative, and only if such territory is deemed by a court or other proceeding to be unreasonable or otherwise invalid or unenforceable, then such territory shall be defined as the states of South Carolina, North Carolina, Georgia, and Alabama.*

(emphasis added) (footnote added).

The employment agreement also contained the following choice of law provision:

*This Agreement shall be governed by, and construed and interpreted in accordance with the domestic laws of the State of South Carolina.* Any dispute concerning or arising under this Agreement must be submitted to a court of competent jurisdiction, either state or federal, within the State of South Carolina, and the Parties hereby voluntarily submit to the jurisdiction of such court.

(emphasis added).

Lucas resigned from Team IA in February of 2009. Subsequent to his resignation, Lucas contacted all but one of the customers with whom he had worked while employed at Team IA. Phone records supplied by Lucas and attached as an exhibit to Team IA's memorandum in opposition to summary judgment indicate Lucas contacted at least eight Team IA customers with whom he worked extensively while he was employed. In a second supplemental response to Team IA's interrogatories, Lucas admitted he contacted "all of his personal customers" by telephone to inform them of his departure, and he listed eleven Team IA customers by name.

Within one week of his resignation, Lucas established and became part owner and operator of 5 Point Solutions, LLC, a company that performed services similar to those provided by

Team IA. The Fulton County, Georgia, Clerk of Superior Court had previously reached an agreement with Team IA for a large microfilm creation project. The day after Lucas formed 5 Point Solutions, Fulton County pulled the project from Team IA and designated Lucas's new company as its microfilm vendor. The Fayette County, Georgia, Clerk of Superior Court also pulled a scanning project from Team IA and awarded the same project to 5 Point Solutions. Lucas had been actively involved in securing business from both of these customers while he worked for Team IA.

Team IA filed a lawsuit for breach of contract, breach of duty of loyalty, tortious interference with contractual relations, and nine other causes of action, alleging *inter alia* that Lucas breached the terms of his employment agreement. Lucas filed a motion for partial summary judgment on the breach of contract action with respect to the non-solicitation and non-competition provisions contained therein, and the circuit court held a hearing on the motion.

Two weeks after the hearing on the summary judgment motion, Team IA filed the Supplemental Affidavit of Brent Yarborough. In that document, Yarborough listed numerous "customers/prospective customers" with whom Lucas had worked in South Carolina, North Carolina, Alabama, and Georgia while employed by Team IA. On October 5, 2009, Lucas filed a Motion to Strike the Supplemental Affidavit as untimely. On October 19, 2009, Team IA filed a Memorandum in Opposition to Lucas's Motion to Strike. The circuit court neglected to expressly rule on the motion to strike, and the November 19, 2009 order granting summary judgment did not mention the supplemental affidavit.

The circuit court granted partial summary judgment to Lucas on the grounds that (1) the restricted territory set forth in the non-competition clause was overly broad as Team IA did not have clients in three of the four states listed, and (2) the non-solicitation provision was unenforceable as it prohibited Lucas from accepting business from unsolicited customers of Team IA. The circuit court applied Georgia law to evaluate the validity of the non-solicitation provision and South Carolina law to evaluate the validity of the non-competition clause. Team IA filed a motion to alter or amend pursuant to Rule

59(e), SCRCP. In its motion, Team IA argued the circuit court erred in failing to consider the facts and evidence set forth in Yarborough's affidavit and supplemental affidavit.

The circuit court denied Team IA's motion to alter or amend, noting, "This Court has considered the issues, reviewed the arguments, documents, and pleadings submitted by all Parties and reviewed the Court's file extensively." The order did not specifically mention Yarborough's supplemental affidavit. This appeal followed.

## STANDARD OF REVIEW

This court reviews the grant of a summary judgment motion under the same standard applied by the trial court under Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n. 2, 677 S.E.2d 612, 614 n. 2 (Ct.App.2009). Rule 56(c), SCRCP, provides that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Rule 56(e), SCRCP, further provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

In ascertaining whether any triable issue of fact exists, the evidence and all inferences that can be reasonably drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Belton v. Cincinnati Ins. Co.*, 360 S.C. 575, 578, 602 S.E.2d 389, 391 (2004). "[I]n cases applying the preponderance of the evidence burden of proof, the nonmoving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

## LAW/ANALYSIS

### I. Application of the Summary Judgment Standard

Team IA argues the trial court erred in accepting as true the facts set forth in Lucas's affidavit while disregarding the facts set forth in Yarborough's initial affidavit and supplemental affidavit. We agree.

A covenant not to compete will be upheld only if it is: (1) necessary for the protection of the legitimate interest of the employer; (2) reasonably limited in its operation with respect to time and place; (3) not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood; (4) reasonable from the standpoint of sound public policy; and (5) supported by valuable consideration. *Rental Uniform Serv. of Florence, Inc. v. Dudley*, 278 S.C. 674, 675–76, 301 S.E.2d 142, 143 (1983).

"Restrictive covenants not to compete are generally disfavored and will be strictly construed against the employer." *Id.* at 675, 301 S.E.2d at 143. "A restriction against competition must be narrowly drawn to protect the legitimate interests of the employer." *Faces Boutique, Ltd. v. Gibbs*, 318 S.C. 39, 42, 455 S.E.2d 707, 708 (Ct.App.1995). Nonetheless, "agreements not to compete, while looked upon with disfavor, critically examined, and construed against any employer, will be upheld as enforceable if such agreement is reasonable as to territorial extent of the restraint and the period for which the said restraint is to be imposed." *Almers v. S.C. Nat'l Bank of Charleston*, 265 S.C. 48, 51, 217 S.E.2d 135, 136 (1975).

"A geographic restriction is generally reasonable if the area covered by the restraint is limited to the territory in which the employee was able, during the term of his employment, to establish contact with his employer's customers." *Dudley*, 278 S.C. at 676, 301 S.E.2d at 143. South Carolina has enforced a non-solicitation agreement precluding a former employee from "selling to the accounts *or in the territory* " in which he had been performing his duties as a sales representative. *Standard Register Co. v. Kerrigan*, 238 S.C. 54, 59, 74, 119 S.E.2d 533, 535, 544 (1961) (emphasis added).

Recently, our supreme court held that "the restrictions in a non-compete clause cannot be rewritten by a court or limited

by the parties' agreement, but must stand or fall on their own terms." *Poynter Invs., Inc. v. Century Builders of Piedmont, Inc.,* 387 S.C. 583, 588, 694 S.E.2d 15, 18 (2010). The supreme court further noted "it would violate public policy to allow a court to insert a geographical limitation *where none existed.*" *Id.* at 587–88, 694 S.E.2d at 17 (emphasis added).

In reaching its conclusion, the *Poynter* court analyzed this court's *Faces Boutique* opinion. *Id.* at 588, 694 S.E.2d at 18 (citing *Faces Boutique,* 318 S.C. at 43–44, 455 S.E.2d at 709). In *Faces Boutique,* this court concluded an employer's willingness to stipulate at trial to an interpretation of a non-competition provision that would render it proper in scope does not rectify the invalidity of the covenant as initially written. 318 S.C. at 43–44, 455 S.E.2d at 709. Therefore, we interpret the supreme court's holding in *Poynter* to mean that (1) a court may not "blue pencil" the restrictions contained in a non-competition provision by inserting or subtracting terms not agreed to by the parties in order to make it valid and enforceable, and (2) the parties may not of their own accord convert an overly broad territorial restriction into an enforceable one by entering into a subsequent agreement that artificially limits the actual terms used in the parties' original contract.

Here, we believe the nationwide territorial restriction contained in the non-competition provision at issue was overly broad on its face. However, we conclude the alternative territorial restriction contained in the parties' original agreement (South Carolina, North Carolina, Georgia, and Alabama) would remain valid and enforceable to the extent it is not overly broad after further development of the facts.

Yarborough's initial affidavit stated:

Team IA both allowed and expected Mr. Lucas to solicit new business for Team IA on a nationwide scale. A review of a sample of Mr. Lucas's sales activities—based on expense reports he submitted to Team IA for reimbursement—demonstrates Mr. Lucas's nationwide sales activities on behalf of Team IA. (*See Attachment 4 Attached Hereto.*) This summary also shows examples of Mr. Lucas's attendance at and participation in tradeshows, on behalf of Team IA, which took place across the country and included attendees representing a nationwide prospective customer base.

The expense report attached to Yarborough's initial affidavit reflects Lucas conducted sales activity in South Carolina, North Carolina, Georgia, Alabama, Kansas, California, Illinois, Pennsylvania, and Florida. However, Lucas's own affidavit conflicts with Team IA's assessment. Lucas's affidavit averred, "I performed no work for customers in Alabama, South Carolina, or North Carolina." We hold further inquiry into the nature of Lucas's assigned territory and contact with customers/potential customers was needed in order to clarify whether the alternative territorial restriction in the non-competition clause of the employment agreement was overly broad and unenforceable. Specifically, whether the "sales activity" Lucas conducted as documented in the expense report included contact with Team IA customers in South Carolina, North Carolina, Georgia, and Alabama is unclear. *See Standard Register Co.*, 238 S.C. at 59, 119 S.E.2d at 535 (enforcing a non-solicitation agreement that precluded a former employee from "selling to the accounts or *in the territory* " in which he had been performing his duties as a sales representative) (emphasis added).

In his supplemental affidavit, Yarborough listed numerous "customers/prospective customers" with whom Lucas worked in South Carolina, North Carolina, Alabama, and Georgia while employed by Team IA.[2] However, the circuit court did not expressly rule on whether this supplemental affidavit was timely. The Record on Appeal is unclear as to whether the circuit court considered Yarborough's supplemental affidavit when ruling on Team IA's motion to reconsider; the order did not specifically mention the supplemental affidavit, nor any of the facts set forth within it. Nonetheless, the order denying Team IA's motion to reconsider noted, "This Court has considered the issues, reviewed the arguments, documents, and pleadings submitted by all Parties and reviewed the Court's file extensively."

Under the circumstances, regardless of whether or not the circuit court considered the facts set forth in Yarborough's

---

2. We decline to rule on whether a non-solicitation agreement's prohibition on contact with former prospective customers of a former employer is overly broad and unenforceable on its face as that particular issue is not yet ripe for our review. Specifically, the Record on Appeal is unclear as to whether Lucas contacted former customers or former potential customers of Team IA.

supplemental affidavit, we hold summary judgment was premature. *See Alston v. Blue Ridge Transfer Co.*, 308 S.C. 292, 294, 417 S.E.2d 631, 632 (Ct.App.1992) ("Accordingly, summary judgment is inappropriate if the facts are conflicting or the inferences to be drawn from the facts are doubtful."). Our decision is based on a genuine issue of material fact in dispute as to whether or not Lucas interacted with Team IA customers in South Carolina, North Carolina, Georgia, and Alabama during the term of his employment. *See Dudley*, 278 S.C. at 676, 301 S.E.2d at 143 ("A geographic restriction is generally reasonable if [it] is limited to the territory in which the employee was able, during the term of his employment, to establish contact with his employer's customers.").

Accordingly, we reverse and remand for further development of the facts in order to clarify application of the law. *See Brockbank v. Best Capital Corp.*, 341 S.C. 372, 378, 534 S.E.2d 688, 692 (2000) ("Summary judgment is not appropriate when further inquiry into the facts of the case is desirable to clarify the application of the law."). We also direct the circuit court to rule on Lucas's Motion to Strike the Supplemental Affidavit of Brent Yarborough prior to entering an order on the Motion for Partial Summary Judgment.

## II. Choice of Law

Team IA contends the circuit court erred in applying Georgia law to determine the validity of the non-solicitation clause at issue despite the presence of a choice of law provision in the employment agreement requiring the application of South Carolina law. We agree.

Choice of law clauses are generally honored in South Carolina. *Nucor Corp. v. Bell*, 482 F.Supp.2d 714, 728 (D.S.C. 2007) ("Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law."); *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 221, 578 S.E.2d 329, 336 (2003) ("We hold that a settlor may designate the law governing his trust, and absent a strong public policy reason, or lack of substantial relation to the trust, the choice of law provision will be honored."); *see also Ellis v. Taylor*, 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994) ("When the language of a contract is plain and capable of legal

construction, that language alone determines the instrument's force and effect.").

In *Livingston v. Atlantic Coast Line Railroad*, 176 S.C. 385, 391, 180 S.E. 343, 345 (1935), our supreme court discussed traditional choice of law rules in the absence of a choice of law provision: "It is fundamental that unless there be something intrinsic in, or extrinsic of, the contract that another place of enforcement was intended, the lex loci *contractu* governs." (emphasis added). "*If the contract be silent thereabout,* the presumption is that the law governing the enforcement is the law of the place where the contract is made." *Id.* (emphasis added). Therefore, traditional choice of law rules apply only in the absence of an express provision regarding the applicable law to govern the contract.

In the present matter, the circuit court applied traditional choice of law rules despite the presence of a choice of law provision designating South Carolina law. Specifically, the circuit court relied upon *Witt v. American Trucking Ass'ns*, 860 F.Supp. 295, 300–01 (D.S.C.1994) (applying South Carolina common law choice of law rules when determining what law should govern a contract that did not contain a choice of law provision), *Livingston*, 176 S.C. at 391, 180 S.E. at 345, and *Lister v. NationsBank of Delaware*, 329 S.C. 133, 144–45, 494 S.E.2d 449, 455–56 (Ct.App.1997) (applying South Carolina law to a breach of contract accompanied by fraudulent act action when the contract did not contain a choice of law provision, when the contract was performed in South Carolina, and when the breach occurred in South Carolina). These cases regarding choice of law *in the absence of a choice of law provision* are not applicable to this contract because it contained a choice of law provision.

The only recognized exception to adhering to the parties' choice of law provision does not apply here because the contract designated South Carolina law, and it is being interpreted here in South Carolina. *See Nucor Corp.*, 482 F.Supp.2d at 728 ("However, a choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy."). Finally, neither party disputes the validity of the choice of law provision. Therefore, the circuit court should have applied South Carolina law.

We need not reach the merits of the final two issues on appeal given our reversal on the previously stated grounds. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues on appeal when the resolution of a prior issue is dispositive).

## CONCLUSION

We conclude further inquiry into the nature of Lucas's assigned territory and contact with customers/potential customers was needed in order to clarify whether the alternative territorial restriction in the non-competition clause of the employment agreement was overly broad and unenforceable. Accordingly, we reverse and remand for further development of the facts in order to clarify application of the law. We direct the circuit court to rule on Lucas's Motion to Strike the Supplemental Affidavit of Brent Yarborough. Finally, we instruct the circuit court to apply South Carolina law in evaluating the non-solicitation provision contained in this employment agreement. Accordingly, the decision of the circuit court is

REVERSED AND REMANDED.[3]

SHORT and KONDUROS, JJ., concur.

---

**3.** We decide this case without oral argument pursuant to Rule 215, SCACR.