Joseph H. WITT, Plaintiff,

v.

AMERICAN TRUCKING ASSOCIATIONS, INC., Defendant.

Civ. A. No. 2:93–0544–18.

United States District Court, D. South Carolina, Charleston Division.

Aug. 16, 1994.

Alan David Toporek, Charleston, SC, Marni E. Byrum, McLean, VA, for plaintiff.

Vance J. Bettis, Stephen T. Savitz, Columbia, SC, for defendant.

### ORDER

NORTON, District Judge.

This matter is before the court upon Defendant's, American Trucking Associations, Inc.'s (hereinafter "ATA"), Motion for Summary Judgment. A hearing was held on this matter on May 27, 1994. At the time of this hearing, the court requested that the parties submit supplemental memoranda regarding a choice of law issue raised by the court. Accordingly, the parties submitted the requested memoranda to the court. The court finds, as seen below, that ATA's Motion for Summary Judgment should be granted.

### I. BACKGROUND

In March of 1955, Witt went to work for ATA as a Safety Clerk. He worked his way up through the department to become a Safety Engineer and Coordinator of Safety Programs. In June of 1980, Witt was transferred to the ATA Sales Department as a Regional Manager.

In 1986, Witt was approached and offered a position in telemarketing. This offer was the result of the company's decision to reduce the number of regional sales managers from five to four, and to implement a telemarketing program. In June of 1986, Tom Fugee, ATA Vice President for Membership and Marketing, met with Witt in the Indianapolis airport. At that meeting, Fugee offered Witt the position of telemarketer, making direct telephone calls to prospective and existing ATA members. According to notes taken by Witt at the June 1986 airport meeting, Witt's new position encompassed the following:

(1) Witt's salary, which had been approximately $3,000.00 per month as a regional manager, would be reduced to $1,500.00 a month, plus 20% of all monies collected. For the first couple of months Witt was employed as a telemarketer, the company agreed to pay him his regular salary in order for his commissions from the sales to accrue and be paid.

(2) Witt would be able to buy a company car for $1.00.

Witt further alleges that the agreement encompassed the following:

(1) Witt would not be required to travel.

(2) Witt would be allowed attendance at sales meetings and the ATA convention.

(3) Witt would be given exclusive responsibility for Class I, II and III suspense and delinquent accounts, nationally, as well as prospective Class 3 carriers. Witt's Memorandum in Opposition to ATA's Summary Judgment Motion, p. 4.

Witt accepted the telemarketing position in July of 1986. At this time, Witt was living in Indiana. During the first week of October 1986, Witt moved to South Carolina. While Witt was a telemarketer from October of 1986 through his resignation in June of 1987, Witt lived in South Carolina.

In August 1986, while still residing in Indiana, Witt learned from Fugee that he would not receive 20% commission on suspense and delinquent accounts. Witt testified that he called Fugee in August of 1986 when he received his first check for telemarketing work done in July. Witt said his call to Fugee was prompted by the fact that "the commission figures did not reflect what I thought I was getting a commission on." Witt Deposition, p. 177 (lines 4–6). Witt testified:

I called Tom, and I'm sure it was Tom I talked to, because I recall Tom saying, 'Joe, you don't get paid on suspense and delinquents. You never have, and you don't now.' Well, I understood I never did before, but in the same breath, I also understood that it was our agreement, since I would be handling these accounts exclusively, that it would be included in the 20 percent of all moneys [sic] reactivated, plus new sold Class 3 accounts.

*Id.* (lines 9–16). Witt further testified:

[Fugee] originally told me at the airport, as I understood it, and here it is right here, 20 percent on new Class 3s reinstatements from suspense and delinquents. Can't get any more plainer than that. I wrote it down. And what was different in August, what prompted my phone call was that check that came with little or no commission after some pretty doggone good money generated those three or four weeks in July. You would think anybody would have made a phone call to say, 'Hey, what is going on here?' So that was different. When he said that wasn't the agreement, it was contrary to what I had understood at the airport meeting.

*Id.* at p. 183 (lines 8–19).

After August 1986, the course of events between Witt and ATA and Fugee followed the rough notes Witt made at the airport and Witt's recollections of his agreement with ATA regarding the telemarketing position. First, ATA notes in its memorandum that Witt was "fully set up by mid-August of 1986" to do the telemarketing program. ATA's Memorandum in Support of its Summary Judgment Motion, p. 8. Second, Witt received the $3,000 per month salary for 3 months after he switched to the telemarketing position as Fugee promised at the airport meeting. Third, in January of 1987, Witt purchased the company car for $1.00 as Fugee also offered at the airport meeting.[1]

Because Witt's performance had not met ATA's expectations, in a March 1987 memorandum, Fugee informed Witt that the company wanted "to see significant improvement in [his] telemarketing performance within the

next 90 days, otherwise you will leave me no choice short of recommending termination."

Witt tendered his resignation in June of 1987. After filing his administrative complaint with the South Carolina Human Affairs Commission, and the Equal Employment Opportunity Commission, Witt sought and received a Notice of Right to Sue. In 1989, Witt filed a lawsuit in federal court alleging both federal and state causes of action (hereinafter "*Witt I*"). Specifically, in *Witt I*, Witt alleged (1) unlawful age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (hereinafter "ADEA"); (2) interference with Employee Retirement Income Security Act pension rights under 29 U.S.C. § 1001 *et seq.* (hereinafter "ERISA"); (3) intentional infliction of emotional distress; (4) breach of the covenant of good faith and fair dealing; and (5) fraud. On April 11, 1991, this court entered summary judgment in favor of ATA in *Witt I* on Witt's claims under the ADEA and ERISA. The court further dismissed without prejudice the pendent state claims against ATA. Witt has now refiled two of his previous state law claims in which he alleges that during the airport conversation in August 1986, Fugee made fraudulent misrepresentations intended to lure him into accepting a new job and then repudiated the resulting agreement, violating a covenant of good faith and fair dealing.

## II. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, this court must view the record in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). While the court is required to construe the facts and all reasonable inferences arising therefrom in the light most favorable to the non-moving party, wholly speculative and/or conclusory assertions are insufficient to withstand a motion for summary judg-

---

**1.** Witt states in his memorandum that he waited until January of 1987 to purchase the car on his own accord. It was through no fault of ATA that he waited six months to purchase the car.

ment. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). The judge is not to weigh the evidence himself but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Where the substantive law mandates a "clear and convincing" standard of proof, as in this case with the fraud cause of action, the court in disposing of a summary judgment motion must consider whether a reasonable factfinder could conclude that the plaintiff had sufficient evidence to meet that burden. *Id.* at 251, 106 S.Ct. at 2511–12.

■ The moving party is entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of genuine issues of material fact, the non-moving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

■ The non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.' [Cite omitted]. 'The mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party].' [Cite omitted]. *Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992). *See also Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes"). However, "[w]here states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not

lie." *Overstreet v. Kentucky Central Life Ins. Co.,* 950 F.2d 931 (4th Cir.1991).

## III. ANALYSIS

### A. Conflict of Laws Issue

■ This court must follow the choice of law rules applicable in South Carolina state courts. *Thornton v. Cessna Aircraft Co.,* 703 F.Supp. 1228, 1230 (D.S.C.1988), *aff'd,* 886 F.2d 85 (4th Cir.1989). South Carolina adheres to common law choice of law rules.

■ In contract actions, South Carolina courts apply the substantive law of the place where the contract at issue was formed. *See, e.g., O'Briant v. Daniel Constr. Co.,* 279 S.C. 254, 305 S.E.2d 241, 243 (1983). This rule applies where a contract's formation, interpretation or validity is at issue. However, where performance is at issue, as it is here, the law of the place of performance governs. *Livingston v. Atlantic Coast Line R.R. Co.,* 176 S.C. 385, 180 S.E. 343, 345 (1935).

■ In tort actions, South Carolina courts apply the law of the place where the wrong occurred. *See, e.g., Dawkins v. South Carolina,* 306 S.C. 391, 412 S.E.2d 407 (1991). In a fraud action, as alleged here, the wrong occurs not where the alleged misrepresentations were made, but where the plaintiff suffers a loss.

Witt was living in Indiana when he agreed to take the telemarketing position. During the first week of October 1986, he moved to South Carolina. While Witt was a telemarketer from October of 1986 through his resignation in June of 1987, he lived in South Carolina.

■ This court concludes, as seen later in this order, that the applicable statute of limitations for the fraud claim began to run in August of 1986 when Witt realized, by his own admission, that he was not going to receive a 20% commission on all accounts, as allegedly Fugee promised him in the Indiana airport meeting.[2] During August of 1986, Witt was residing in Indiana. Thus, with regard to the fraud claim, this court concludes that Witt suffered any alleged loss while residing in Indiana. The result from

---

**2.** *See infra* p. 301–303 (statutes of limitations discussion).

this conclusion is that Indiana law applies to Witt's fraud claim.

■ Witt's cause of action for breach of an implied covenant of good faith raises an issue of performance under the at-will employment agreement. While that agreement was formed in Indianapolis, Witt performed his duties under the agreement in South Carolina. Thus, under the authorities cited above, this court concludes that South Carolina substantive law governs Witt's claim for breach of an implied covenant of good faith.

■ As to procedural matters, this court must apply South Carolina law. *See, e.g., Rollins v. Proctor & Schwartz,* 478 F.Supp. 1137, 1151 (D.S.C.1979), *rev'd on other grounds,* 634 F.2d 738 (4th Cir.1980). Thus, this court concludes that South Carolina's applicable statutes of limitations govern Witt's claims.

## B. ATA's Summary Judgment Motion: Statutes of Limitations

■ Both parties agree that if South Carolina's statutes of limitations apply to this case, and the court has so determined, then it is the six year statutes of limitations that are controlling. *See* S.C.Code Ann. § 15–3–530(1) & (5) and § 15–3–535 (Law.Co-op.1976 as amended). These statutes provide that actions based upon an implied contractual obligation and for injury to the person "shall be commenced within six years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action." *Id.* at § 15–3–535.[3]

> [The statute of limitations begins to run when] the facts and circumstances of an injury would put a **person of common knowledge and experience on notice that some claim against another party might exist.**

*Burgess v. American Cancer Soc'y, South Carolina Div., Inc.,* 300 S.C. 182, 386 S.E.2d

798, 800 (Ct.App.1989) (emphasis added). The test is an objective one. *Id.*

> Therefore, the statutory period of limitations begins to run when a person **could or should have known,** through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto.

*Id.* (emphasis added); *accord Mitchell v. Holler,* 429 S.E.2d 793, 794–95 (S.C.1993). Thus, Witt must have commenced this action within six years of the date he knew or should have known that he "might" have a claim against ATA for fraud and/or breach of an implied covenant of good faith and fair dealing.[4]

There are two critical dates regarding the statutes of limitations issue: August of 1986 and March of 1987. In short, and as further explained below, August of 1986 is when Witt was informed that he would not receive a 20% commission on all accounts as allegedly promised and March of 1987 is when ATA informed Witt of his unsatisfactory job performance and its intent to terminate his employment if his actions were not corrected.

Witt's claims rest upon his contention that Tom Fugee fraudulently induced him to give up his position as a Regional Manager in the Sales Department to accept a telemarketing position in the Marketing Division by misrepresenting certain facts to him in a face-to-face meeting they had in June of 1986. A principal focus of Witt's fraud claim involves the amount of compensation Witt was to receive as a telemarketer. Witt claims that Fugee told him at their June 1986 meeting that he would receive 20% of all the monies he collected for either new *or* delinquent accounts (as opposed to 20% of all *new* business generated). At his deposition, Witt asserted that he was informed by Fugee in August of 1986 that he (Witt) would not be paid 20% of all monies he collected. Witt

---

**3.** The limitations period has been reduced to three years for claims accruing on or after April 5, 1988. *Id.* at § 15–3–530.

**4.** The statutes of limitations were not tolled during the pendency of *Witt I* in which Witt asserted these same two claims. South Carolina law does

not provide for the tolling of the limitations period while a claim is pending in federal court. *See, e.g., Bellamy v. Borders,* 727 F.Supp. 247, 252 (D.S.C.1989); *Nowlin v. General Telephone Co.,* 426 S.E.2d 114, 116 (S.C.Ct.App.1992), *aff'd,* 444 S.E.2d 508 (S.C.1994).

Deposition, p. 176–181, 183–85, 188 & 197; *accord* Witt's Memorandum in Opposition to ATA's Summary Judgment Motion, p. 7. Witt asserts that this was an intentional misrepresentation intended by Fugee to lure him into accepting the job of telemarketer. Complaint, para. 26. ATA argues that the statutes of limitations began to run on the date of Witt's conversation with Fugee regarding his compensation, August of 1986.

Witt, on the other hand, argues that the statutes of limitations did not begin to run until March of 1987 when he received a memorandum from Fugee which informed Witt that his performance was inadequate and that if he did not improve within ninety (90) days, Fugee would have to terminate his employment. To avoid the commencement of the running of the statutes of limitations in August of 1986, Witt argues that when he learned that the payment structure was not as he believed it to be, he had no reason to believe that **all** the representations made to him at the Indianapolis airport were false. Witt's Memorandum in Opposition to ATA's Summary Judgment Motion, p. 19 (emphasis added).[5]

■ The fallacy in Witt's argument is the above statement. "[The statute of limitations begins to run when] the facts and circumstances of [the] injury would put a person of common knowledge and experience on notice that **some claim against [ATA] might exist**." *Burgess,* 386 S.E.2d at 800 (emphasis added). This court concludes that in August of 1986 the facts and circumstances were such that a person of common knowledge and experience would be put on notice that **some claim against ATA might exist.** By Witt's own admission, he knew in August of 1986 that the commission would not be paid as he alleges he was promised in the Indianapolis airport. Thus, Witt knew that **some claim against ATA might exist** in August of 1986. To commence the stat-

utes of limitations, it is not required that he be on notice that **all** representations made to him at the Indiana airport were false.

In a last effort to evade the commencement of the statutes of limitations in August of 1986, Witt makes two arguments. First, similar to the above discussion, he claims that although he knew he would not receive the compensation he was promised at the airport meeting in August of 1986, he was also defrauded regarding a number of other issues (such as ATA's willingness to pay his expenses at ATA's annual convention) arising out of the same job offer made by Fugee during the same conversation at the Indianapolis airport in June of 1986. Because he assertedly did not learn of ATA's allegedly bad purposes as to these items until after the August 1986 conversation, Witt contends his claim did not accrue until he "discovered" ATA's intentions regarding these items, which Witt contends was in March of 1987.

Again, this contention cannot be reconciled with South Carolina law. In a recent case, the South Carolina reiterated the following:

> an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that **some right of his has been invaded or that some claim against another party might exist. The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery developed.**

*Wiggins v. Edwards,* 442 S.E.2d 169, 170 (S.C.1994). "If, on the date of injury, a plaintiff knows or should know that she had some claim against someone else, the statute of limitations begins to run for **all claims** based on that injury." *Id.* (citing *Tollison v. B & J Machinery Co.,* 812 F.Supp. 618, 620 (D.S.C.1993)) (emphasis added).

---

5. Witt maintains that because he worked for ATA for 32 years, he had a relationship of trust with both Fugee and ATA. Witt claims that several events took place after August of 1986 that fostered this relationship of trust with ATA. First, ATA notes in its memorandum that Witt was "fully set up by mid-August of 1986" to do the telemarketing program. ATA's Memorandum in Support of its Summary Judgment Motion, p. 8. Second, Witt received the $3,000 per month salary for 3 months after he switched to the telemarketing position as Fugee promised at the airport meeting. Third, in January of 1987, Witt purchased the company car for $1.00 as Fugee also offered at the airport meeting.

Here, accepting Witt's representations as true, Fugee made representations to him regarding his compensation package in June of 1986 and he discovered in August of that year that the representations regarding his compensation were false and allegedly made with fraudulent intent. In the language of *Wiggins,* Witt knew that "some right of his had been invaded or that some claim against another party might exist" in August of 1986. His cause of action accrued at that point and the fact that ATA subsequently failed to fulfill other promises allegedly made to him during the same Indianapolis airport conversation would arguably go to his claim for damages, not to the accrual of his cause of action.

■ Witt's second effort at evasion is equally futile. He asserts that the statutes of limitations were tolled by operation of S.C.Code Ann. § 15–3–30 (Law.Co-op.1976 as amended) because ATA is not a South Carolina corporation and has no registered agent in South Carolina. Section 15–3–30 provides that if a defendant is out of state for more than one year when or after a cause of action accrues, the statute of limitations is tolled until his return to the state. *Id.* The statute is intended to protect plaintiffs against the possibility that they might not be able to find absent defendants for service of process. As the Fourth Circuit explained in its *en banc* decision in *Catawba Indian Tribe of South Carolina,* 978 F.2d 1334, " '[t]he purpose of ... [§ 15–3–30] is to remedy the problem of locating a nonresident defendant before expiration of the statute of limitations.' " *Id.* at 1348 (quoting *Dandy v. American Laundry Machinery, Inc.,* 301 S.C. 24, 389 S.E.2d 866, 868 (1990)).[6] "[T]he ... statute is inapplicable [,however,] when the statute's purpose is not fulfilled." *Id.* Where "the difficulty in locating an out of state defendant before the expiration of the statute of limitations ... is not present ... the tolling statute for out of state defendants ... [is] inapplicable...." *Id.* at 1349.

[18] Witt does not assert that he had problems in finding ATA. He had worked for ATA since 1955 and had visited its headquarters in Alexandria, Virginia on several occasions. Indeed, at the time this lawsuit was filed, Witt had just concluded years of litigation against ATA and most assuredly knew how to locate it. Because the statute's purpose would not be fulfilled by applying it in this case, it may not be applied. Witt's claim is accordingly stale.

In summary, this court concludes that this action should have been commenced by August of 1992. Witt filed his complaint on November 13, 1992 and service was effected on February 8, 1993. Therefore, the statutes of limitations bar this action.

## C. ATA's Summary Judgment Motion: Fraud, Constructive Fraud and the Implied Covenant of Good Faith and Fair Dealing

As seen below, even if this suit were not barred by the statutes of limitations, Witt's claims still fail as a matter of law, rendering summary judgment in favor of ATA proper.

### 1. Fraud

Witt's second cause of action in his Complaint is for fraud. ATA argues that even if the statute of limitations does not bar the fraud claim, summary judgment is proper since Witt presents no clear and convincing evidence of fraud. As found above, Indiana law would apply to Witt's fraud claim; thus, the following analysis is made under Indiana law.[7]

■ To maintain an action for fraud under Indiana law, a plaintiff must prove that the defendant made a material misrepresentation of past or existing fact, that the representation was made with knowledge of its falsity (or with reckless disregard for its falsity), that he relied on the statement and that he suffered injury as a result. *Adoptive*

---

**6.** In *Garner v. Houck,* 435 S.E.2d 847 (S.C.1993), the South Carolina Supreme Court repudiated *dicta* in *Dandy* relating to the proper construction of S.C.R.C.P. 3(b). *Dandy*'s discussion of § 15–3–30, however, was left unaffected by *Garner.* Accordingly, *Dandy*'s and *Catawba*'s con-

struction of § 15–3–30 remain controlling in this case.

**7.** *See supra* p. 300–301 (conflict of laws discussion).

*Parents of M.L.V. and A.L.V. v. Wilkens,* 598 N.E.2d 1054, 1058 (Ind.1992); *Archem, Inc. v. Simo,* 549 N.E.2d 1054, 1063 (Ind.App. 1990).[8]

Under Indiana law, as stated above, one of the essential elements in an action for fraud is the intent to deceive. Therefore, to succeed on the fraud claim, Witt must produce evidence of an intent to deceive. Witt has not met this burden.

In his Complaint, Witt alleged that ATA "or its agent intentionally made false and material representations to Plaintiff with the intent that Plaintiff act upon those false representations by inducing Plaintiff to accept the position which Defendant knew did not include the compensation nor the specific work that had been represented to Plaintiff." Complaint, para. 26. Eight years have now lapsed since the conversation Witt referenced in his Complaint and despite years of discovery, Witt has no evidence to support that claim.

■■■ Witt has offered no evidence that Fugee *intentionally* misrepresented any aspect of the telemarketing position in order to get Witt to give up his position as regional manager to become a telemarketer. Indeed, while Witt maintains that Fugee told him in the airport in June of 1986 that he would be paid a 20% commission on all monies he collected, even Witt was unwilling to characterize this alleged misrepresentation by Fugee as "intentional." When questioned about Fugee's intent at his deposition, Witt testified:

Q. In your opinion, do you believe that Mr. Fugee ... intentionally made one statement to you in the airport, and intentionally made another statement to you later when you called him about the commissions?

A. I don't know about your word 'intentionally,' but he did make two different statements that contradicted each other.

Q. From the way you understood it?

A. Yeah.

Witt Deposition, p. 185 (lines 7–16).

■■■ The ultimate question on a motion for summary judgment is whether, on the record before the court, a rational juror could find for Witt on his claim for fraud. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. Witt has produced no evidence, direct or circumstantial, to prove the element of "intent" of his fraud claim. Accordingly, summary judgment must be granted on the fraud claim.

*2. Constructive Fraud*

■■■ In his memoranda regarding this summary judgment motion, Witt also now alleges that constructive fraud is applicable to his case.[9] In his supplemental memoran-

---

8. Under South Carolina law, the elements of fraud are similar. *See M.B. Kahn Constr. Co. v. South Carolina Nat'l Bank of Charleston,* 275 S.C. 381, 271 S.E.2d 414 (1980):

In order to recover in an action for fraud and deceit, based upon misrepresentation, the following elements must be shown by clear, cogent and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; (9) the hearer's consequent and proximate injury. Failure to prove any of the foregoing elements is fatal to recovery.

*Id.,* 271 S.E.2d at 415. Irrespective of the whether South Carolina or Indiana law is applied, the result is the same—summary judgment in favor of ATA.

9. Under Indiana law, "[c]onstructive fraud is the breach of a legal or equitable duty which is

fraudulent because of its tendency 'to deceive others, to violate a public or private trust, or to injure public interest.' " *Medtech Corp. v. Indiana Ins. Co.,* 555 N.E.2d 844, 848 (Ind.App. 1990) (citation omitted). The elements of constructive fraud under Indiana law are:

(1) a duty existing by virtue of the relationship between the parties; (2) representations or omissions made in violation of that duty; and (3) a reliance on that representation or omission by the individuals to whom the duty is owed and to the detriment of that individual. *Id.*

Under South Carolina law, constructive fraud is involved where the defendant has not acted with knowing or reckless disregard of falsity but the other elements of fraud are present. *See, e.g., O'Quinn v. Beach Ass.,* 272 S.C. 95, 249 S.E.2d 734, 737–38 (1978); *Singleton v. Mullins Lumber Co.,* 234 S.C. 330, 108 S.E.2d 414, 424 (1959); *Greene v. Brown,* 199 S.C. 218, 19 S.E.2d 114 (1942).

dum, Witt footnotes: "If the Court determines that Indiana law should control this case, Plaintiff would move the Court for leave to amend his Complaint to include a claim for constructive fraud and concealment." Witt's Supplemental Memorandum, p. 1 n. 1. From this statement, it appears that Witt's belief is that he would only have this cause of action available to him if the court were to now determine that Indiana law should apply rather than South Carolina law. This belief, however, is in error. The tort of constructive fraud has been equally available under South Carolina law, the law which all parties thought determined this entire action prior to the date of this order. *See supra* p. 304 and note 9.

On July 7, 1993, this court entered a scheduling order pursuant to Fed.R.Civ.P. 16(b) and Local Rule 7.10, D.S.C., establishing October 1, 1993, as the deadline for amending the pleadings in this case. Fed.R.Civ.P. 16(b) plainly states that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge...."

■■■■ Fed.R.Civ.P. 15(a) states in relevant part that "a party may amend [his] pleading[s] only by leave of [the] court" and that "leave shall be freely given when justice so requires." It was within the sound discretion of the district court to decide whether to grant such a leave. A district court must specify its reasons for denying an amendment unless the reasons are clear from the record. *Island Creek Coal Co. v. Lake Shore,* 832 F.2d 274, 279 (4th Cir.1987). Specifically, the United States Supreme Court has established that amendments should be permitted in the absence of (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously alleged; (4) undue prejudice to the opposing party; or (5) futility of the amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227,

230, 9 L.Ed.2d 222 (1962). Delay alone is not a sufficient reason to deny an amendment, but is an appropriate reason when accompanied by bad faith, futility or prejudice. *Nat'l Bank of Washington v. Pearson,* 863 F.2d 322, 327 (4th Cir.1988). Courts have denied amendments where a party has had sufficient opportunity to state a claim and has failed to do so. *See infra* p. 305–306.

■■■ Witt has not suggested the presence of "good cause" nor has he justified his delay in his request to amend. Witt has only suggested to this court that if Indiana law should apply, then he wishes to add a claim for constructive fraud, as if constructive fraud only existed under Indiana law. Up to the time of this court's questioning of the correct law to be applied to this case on May 27, 1994, Plaintiff was under the belief that South Carolina law applied. Constructive fraud has always been an available theory of recovery under South Carolina law for Witt to assert. There is no reason why Plaintiff could not have alleged this theory earlier.[10]

"A motion for leave to amend is not a vehicle to circumvent summary judgment." *Schlacter–Jones v. General Tel. of Cal.,* 936 F.2d 435, 443 (9th Cir.1991). "[A]fter the parties ha[ve] conducted discovery and a pending summary judgment motion ha[s] been fully briefed," the court should be strongly disinclined to grant leave to amend, particularly where no good cause can be shown for the delay. *Id.* (citations omitted); *see also Woodson v. Fulton,* 614 F.2d 940, 942–43 (4th Cir.1980) (attempt to amend denied because made on same day summary judgment granted) ("While leave to amend should be liberally granted, it may be denied for undue delay."); *Overseas Inns, S.A. P.A. v. United States,* 911 F.2d 1146, 1150 (5th Cir.1990) ("This case is unlike the usual one in which leave to amend is freely to be given. Extensive prelawsuit and pretrial proceedings have taken place. More importantly, the government has already filed a summary

Since the court concludes, as seen below, that Witt's motion to amend his Complaint should be denied, the court does not reach the substantive law issues of a constructive fraud cause of action.

10. The Complaint in this action was filed on November 9, 1992 and service was effected on February 8, 1993. The two state claims asserted here were also asserted in *Witt I,* which was commenced in 1989. Witt has not asserted any new causes of action regarding his claims against ATA since *Witt I,* almost six years ago.

judgment motion based on the current pleadings. To grant Overseas leave to amend is potentially to undermine the government's right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. The summary judgment procedure has built-in protections against premature judgments. A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint."); *Carter v. Supermarkets Gen. Corp.*, 684 F.2d 187, 191–92 (1st Cir.1982) (no valid reason for undue delay where plaintiff waited 6 years after filing complaint to seek amendment).

Based on the above law and Witt's inability to establish good cause for his unduly delayed request to amend, this court denies Witt's request to amend his complaint to assert a cause of action for constructive fraud.

### 3. Implied Covenant of Good Faith

ATA further argues that even if the statute of limitations does not bar the cause of action for implied covenant of good faith, summary judgment is proper on this claim since there is no such covenant in an at-will employment relationship. As previously determined, South Carolina law would apply to this cause of action.[11]

At the hearing before this court, Witt agreed that there is no covenant of good faith in an at-will employment relationship under South Carolina law. *See, e.g., Satterfield v. Lockheed Missiles and Space Co.*, 617 F.Supp. 1359, 1363–64 (D.S.C.1985) (Judge Hawkins held that there is no implied covenant of good faith and fair dealing in at-will employment).[12] An implied covenant of good faith and fair dealing is antithetical to the whole notion of at-will employment. As Judge Hawkins pointed out in *Satterfield:*

'In the context of [employment at-will] it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termi-

nation. The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent.'

617 F.Supp. at 1364 (quoting *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983)).

Conceding the above, Witt proceeded to argue at the hearing that the alleged fraudulent misrepresentation created a contractual relationship and a covenant of good faith arose therefrom. Witt provides no case law to support this proposition. This court finds that Witt's first cause of action, breach of an implied covenant of good faith and fair dealing, fails as a matter of law.

### IV. CONCLUSION

This court finds that the statutes of limitations bar Witt's claims. In the alternative, this court finds that Witt's claims of fraud and an implied covenant of good faith fail as a matter of law. Either scenario renders summary judgment in favor of ATA proper. This court further finds that Witt's motion to amend its Complaint to include a cause of action for constructive fraud is unduly delayed and no good cause has been shown for such undue delay.

It is therefore,

**ORDERED,** that Defendant's, American Trucking Associations, Inc.'s, Motion for Summary Judgment be **GRANTED.**

**AND IT IS SO ORDERED.**

---

**11.** *See supra* p. 300–301 (conflict of laws discussion).

**12.** Indiana law is in accord. *See, e.g., Hamblen v. Danners, Inc.*, 478 N.E.2d 926, 929 (Ind.App.

1985); *Gossage v. Little Caesar Enter.*, 698 F.Supp. 160, 163 (S.D.Ind.1988).